CONSOLIDATED MORTGAGE & FINANCE CORPORATION, demandante y recurrida, *v.* ROBERT A. COOLEY y ELIZABETH W. COOLEY, demandados y recurrentes.

*Número:* R-69-304          *Resuelto:* 14 de noviembre de 1974

*Rafael Martínez Alvarez, Jr., Rafael Martínez Alvarez, III* y *José A. Fernández Paoli,* abogados de los recurrentes; *Rodríguez Ema, Rodríguez Ramón, Benítez Gautier & Sequeira, D. Padín Mimoso, A. Emanuelli Belaval, Teodoro Peña García* y *Alfonso L. García Martínez,* abogados de la recurrida.

PER CURIAM: Impugnan los recurrentes en este recurso la sentencia dictada por el tribunal de instancia declarando con lugar la demanda contra ellos reclamándoles el pago de $25,000 por incumplimiento de contrato. Aducen como fundamento para la revocación que el tribunal de instancia incidió: a) al concluir que existía un contrato válido entre las partes; b) al concluir que la aquí recurrida cumplió con los términos de dicho contrato; c) al no declarar que el contrato era uno de adhesión, desrazonable, injusto y contrario a la buena moral y d) al determinar que la cláusula sobre el pago de $25,000 constituía una penalidad en sustitución de una indemnización por daños.

Una breve exposición de los hechos pertinentes, según concluidos por el tribunal de instancia y sostenidos por la prueba desfilada, será suficiente para disponer de los errores apuntados.

El recurrente Robert A. Cooley y su esposa eran dueños de una finca de 48 cuerdas ubicada en el Barrio Sabana Llana de Río Piedras. Apremiado por deudas que gravaban la propiedad y otras de carácter personal, Cooley acudió a la recurrida Consolidated Mortgage & Finance Corporation con el propósito de obtener financiamiento que le permitiera atender el pago de sus deudas y desarrollar la finca en un proyecto de vivienda. Se suscribió un contrato entre ellos mediante el cual Consolidated se comprometió a conseguirle en préstamo la cantidad de $75,000 al 8% de interés más una comisión del 5%, dentro

de un plazo de 30 días siguientes al 18 de marzo de 1964 fecha en que se otorgó el contrato. Cooley se obligó a otorgarle a Consolidated el derecho exclusivo de financiar el desarrollo del proyecto de viviendas y el financiamiento permanente garantizado por la F.H.A. El contrato dispuso el pago de una penalidad de $25,000 para el caso en que Cooley vendiera la finca.

El 13 de julio de 1964, cerca de cuatro meses después de firmado el contrato, Cooley vendió la finca por la cantidad de $379,771.20. Consolidated le reclamó entonces el pago de la penalidad de $25,000 y obtuvo sentencia a su favor.

El recurrente sostiene en su primer apuntamiento que el contrato no tenía causa arguyendo que Consolidated no se obligaba a hacer alguna cosa o a prestar algún servicio. No tiene razón.

La causa, como sabemos, consiste en la razón por la cual se obliga el deudor. En términos sencillos y diáfanos la define Guaroa Velázquez como "la razón esencial que impulsa al deudor a obligarse." Guaroa Velázquez: *Las Obligaciones Según el Derecho Puertorriqueño*, pág. 44. Consolidated se comprometió con Cooley a conseguirle dentro del plazo de 30 días la cantidad de $75,000 en préstamo para que éste pagara deudas apremiantes y sufragara los gastos iniciales para el desarrollo de un proyecto de vivienda. Esa fue la causa del contrato para Cooley; la razón por la cual él asumió las obligaciones impuestas por el contrato.

El segundo apuntamiento se refiere a la conclusión del tribunal de instancia de que el contrato era válido y que Consolidated cumplió con sus términos. Alega el recurrente que Consolidated nunca obtuvo una promesa en firme (*Firm commitment*) para conseguir el préstamo dentro del plazo de 30 días. El apuntamiento es inmeritorio. Consolidated le consiguió el dinero y se otorgó la escritura de hipoteca el 12 de mayo de 1964. Aparece de la prueba que no se pudo firmar antes porque el propio Cooley demoró el otorgamiento a pesar de las

diversas comunicaciones que se le dirigieron para que entregara los documentos necesarios para el estudio de títulos y la preparación de las escrituras.

El tercer apuntamiento ataca la validez del contrato por ser uno de adhesión, desrazonable, injusto y contrario a la buena moral. El contrato fue objeto de negociación entre Cooley, Consolidated y el Sr. Sokolinsky. Se discutieron entre las partes las condiciones del mismo siendo Cooley asistido durante todo el proceso de la negociación por un perito economista.

■ El mero hecho de que una de las partes esté en mejores condiciones económicas que la otra no hace el contrato en este caso uno de adhesión. En verdad, es raro el caso en transacciones de esta índole en que las partes se encuentren en igual posición económica. Lo usual es lo contrario. Es por eso necesario algo más que la mera desigualdad económica de las partes para considerar el contrato uno de adhesión. En el caso de autos hubo conversaciones previas entre las partes, se discutieron las condiciones y hubo el debido asesoramiento antes de otorgarse el contrato. Cooley estaba en perfecta libertad de aceptar o no aceptar sus términos.

■ En cuanto a la cláusula penal el recurrente no nos ha puesto en condiciones de considerar sus objeciones a la misma. No hay prueba en el récord sobre qué efecto tiene esta cláusula en el financiamiento de viviendas, la forma en que incrementan los costos, las costumbres y usos prevalecientes en la industria y cómo impide o agrava la promoción de la política pública en facilitar el financiamiento para la construcción económica de viviendas. Son estos factores indispensables para considerar la validez de dicha cláusula.

■ Establecida la validez del contrato, el cuarto error se reduce a apuntar que la recurrida no alegó ni probó que el incumplimiento del contrato le causó daños. No tiene razón. No es necesario alegar daños bajo una cláusula penal. *Clausells* v. *Salas*, 51 D.P.R. 89–95 (1937).

• ■ El propósito de la cláusula penal es precisamente rele-
var al acreedor de probar· daños. Nos dice al respecto Guaroa
Velázquez, *op. cit.* a la pág. 165:

"... no es necesario que el acreedor establezca el montante
del daño ni demuestre la existencia del perjuicio, puesto que hay
acerca de estos puntos un convenio entre las partes, cuyo propó-
sito es precisamente suprimir toda controversia al respecto."

En el mismo sentido se pronuncia Espín Cánovas, *La Cláusula
Penal en las Obligaciones Contractuales*, 30 Rev. de Der. Pri-
vado 145, 153 (1946).

No habiéndose cometido los errores apuntados por el re-
currente *se dictará sentencia confirmando la sentencia recu-
rrida.*