LEVITT AND SONS OF PUERTO RICO, INC., demandante y recurrente, *v.* HON. FEDERICO HERNÁNDEZ DENTON, ETC., demandado y recurrido.

*Número:* O-75-544     *Resuelto:* 17 de septiembre de 1976

*O'Neill & Borges* y *Raúl González Díaz,* abogados de la recurrente; *Julio López Keelan, Reinaldo Rodríguez Pagán, Wilfredo López Irizarry, Samuel Martí Santiago, Migdalia Fratichelli, Mario Batiz Santos, Yusif Mafuz Blanco,* abogados del Departamento de Asuntos del Consumidor; *Canales & Ferrer* y *César T. Andreu Meguinoff,* abogados de los *amici curiae,* C. Ramón Investment Corp. y Ramírez de Arellano and Co., Inc.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Este caso que terminó ante el Departamento de Asuntos del Consumidor por decisión administrativa de 18 de diciembre de 1974 fue resuelto mediante interpretación del Art. 10 de la Ley del Oficial de Construcción (Núm. 130 de 13 de junio de 1967) que se aparta radicalmente de su texto entonces vigente, aplicando disposiciones que más tarde aparecen incorporadas a dicha Ley al ser enmendada por la Núm. 160 de 9 de junio de 1976 a regir 60 días después, enmienda auspiciada y promovida por dicho Departamento. Resolvemos el recurso de la urbanizadora aplicando el Derecho vigente tanto al firmarse el contrato en septiembre de 1973 como al ventilarse la querella del comprador y para llegar a las conclusiones y fundamentos del dictamen no ha sido necesario descansar en la siempre invitante apertura de que es esencialmente frágil la teoría legal que para prevalecer ha necesidad de enmiendas al estatuto objeto de interpretación.

José Muñoz González suscribió el 3 de septiembre de 1973 un contrato con la recurrente Levitt para adquisición por compra de una vivienda en la Urbanización Levittown Lakes en Toa Baja, por precio de $29,780.00, del que entregó a la vendedora un anticipo o depósito de $500.00. Tres semanas después informó que no podía completar el pronto pago y so-

licitó resolución del contrato y devolución del depósito, lo que rehusó la vendedora apercibiendo al comprador que de no cumplir el contrato, ella retendría los $500 en satisfacción de daños líquidos por así autorizarlo el contrato en las siguientes cláusulas:

"21. Mediante debida notificación al COMPRADOR, la VENDEDORA podrá resolver este contrato en cualesquiera de los siguientes casos: a) cuando el COMPRADOR no haya pagado las sumas convenidas dentro de los plazos fijados en el contrato; b) cuando el COMPRADOR, sin causa justificada, se niegue a firmar la escritura final después de habérsele requerido para ello; c) cuando el COMPRADOR le notifique a la VENDEDORA que no tiene interés en seguir con los trámites de compra de la vivienda, o deje de cumplir con sus obligaciones contractuales; d) en el caso previsto en el primer párrafo del Artículo 10 de este contrato; y e) en los casos previstos en los incisos (e), (f) y (g) del Artículo 20 de este contrato.

22. En los casos de resolución de este contrato a que se refieren los incisos (a), (b), (c) y (d) del Artículo 20, se devolverán al COMPRADOR sus depósitos íntegramente, con intereses a razón del 4% desde la fecha del depósito.

En los casos a que se refieren los incisos (e), (f) y (g) del Artículo 20, la VENDEDORA devolverá al COMPRADOR sus depósitos, sin intereses; en los casos a que se refiere el Artículo 21 y en cualquier otro caso de resolución por causas no imputables a la VENDEDORA, ésta devolverá al COMPRADOR sus depósitos, sin intereses, pero podrá retener por concepto de daños liquidados las siguientes cantidades: (1) el 2% del precio de compraventa de viviendas cuyo valor no exceda de $30,000 y el 3% cuando sea mayor de $30,000, siempre que el correspondiente préstamo sea o vaya a ser tramitado a través de los gobiernos de los Estados Unidos, o de Puerto Rico, o de cualesquiera de sus instrumentalidades; (b) 5% del precio de venta si se trata de préstamos convencionales o de venta en efectivo. Igualmente podrá retener cualquier otra cantidad convenida anteriormente en este contrato y que no esté en conflicto con la ley o los reglamentos."

Este contrato se ajusta a la forma o modelo uniforme revisada y aprobada el 7 de febrero de 1973 por la Administración de Servicios al Consumidor cuyo director era el aquí

recurrido, en ejercicio de su facultad para determinar las cantidades o porcientos razonables que puedan deducirse por el constructor en caso de resolución. Art. 10 (d) Ley Núm. 130 citada (17 L.P.R.A. sec. 510 (d) ).

Llevó el comprador su querella al Departamento que ordenó a Levitt devolver el depósito menos $10 que podía retener por "posibles gastos de investigación de crédito", sujeta a ulterior sanción de multa, fundada su decisión en que la urbanizadora no había probado daños, prueba que según teoría del recurrido es indispensable para deducir del depósito porque no siendo la Cláusula 22 una de carácter penal[1] no quedaba la vendedora relevada de presentar esa evidencia, leyendo el concepto "daños líquidos" en la dicha cláusula como daños a sustanciarse por prueba, y los por cientos allí insertos como límites a la facultad estimativa del Secretario de DACO.[2] La decisión administrativa fue con-

---

[1] Como cláusula penal que releva de prueba la califica el Secretario en memorandum de 9 de marzo de 1976 al Senador Hernández Agosto, Pres. Comisión Socioeconómica del Senado, en apoyo de propuestas enmiendas a la Ley 130, del que extractamos: "Actualmente la gran mayoría de los contratos que revisa el Departamento de Asuntos del Consumidor disponen para la retención de un 2% del precio de compraventa de la vivienda. Estas cláusulas están redactadas como *cláusulas penales* donde se estipula que dicho porciento [*sic*] será retenido como indemnización de los gastos incurridos y daños sufridos por el constructor o urbanizador. El Departamento de Asuntos del Consumidor endosa—para una mayor protección del consumidor—que se estipule en los contratos, sujeto a revisión por el Secretario, la cantidad *máxima* que podrá retenerse en los casos indicados, entendiéndose que dicha cantidad no excederá de aquella cantidad máxima dispuesta por el Secretario, y disponiéndose además que el urbanizador *siempre* tendrá la obligación de probar los daños sufridos o gastos incurridos ante el Departamento de Asuntos del Consumidor. Los daños concedidos no excederán de la cantidad *máxima* dispuesta en el contrato." (Énfasis en el original.)

[2] A la pág. 13 de su alegato el recurrido da como razón adicional para su decisión que "estos [contratos] por su naturaleza no constituyen un riesgo para los vendedores quienes tienen asegurada su inversión por la demanda que opera en un país altamente poblado" aseveración que choca con la conocida decadencia de la construcción.

firmada en revisión por el Tribunal Superior y al recurrir la urbanizadora expedimos el auto.

En Puerto Rico se ha aprobado legislación para proteger al consumidor de malas prácticas comerciales sin recargar con exigencias y condiciones onerosas al vendedor, productor o empresario. La Asamblea Legislativa ha sentado esa pauta de regulación balanceada en reconocimiento de la interdependencia de intereses que vincula al productor y al consumidor. Sigue así el ordenamiento del derecho civil común que básicamente es compendio de compromisos y ajustes en busca de un equilibrio que armonice intereses en conflicto.

El más directo esfuerzo legislativo para proteger al comprador de viviendas de la rudeza con que a veces opera la ley económica de oferta y demanda, lo constituye la Ley creando la Oficina del Oficial de Construcción que es la Núm. 130 aprobada el 13 de junio de 1967 [3] (17 L.P.R.A. sec. 501 y ss.). Su Art. 9 define y enumera las prácticas indeseables por el urbanizador o constructor en el negocio de la construcción de viviendas, y en su Art. 10, inciso (f) (17 L.P.R.A. sec. 510) hace lista pormenorizada de los requisitos que deben contener los contratos de opción o de compraventa

---

[3] Su exposición de motivos, luego de reiterar la política pública de que cada familia puertorriqueña tenga un hogar propio adecuado, expresa:

"Durante los últimos años Puerto Rico ha experimentado un acelerado desarrollo económico. Ello ha permitido que un mayor número de personas puedan lograr el objetivo de poseer su propio hogar. Como resultado de esta situación se ha creado un mercado de viviendas donde las reglas de la oferta y demanda operan libremente. En muchos casos el ciudadano que anhela vivamente la posesión y disfrute de su propio hogar, como ente más débil, es objeto de prácticas indeseables en el negocio de la construcción, que menoscaban el principio mismo de que un mayor número de personas adquiera una vivienda propia y adecuada.

Corresponde a nuestro Gobierno proteger a sus ciudadanos contra tales prácticas a fin de garantizar que la política pública de que cada familia tenga un hogar propio y adecuado se cumpla a plenitud en todos sus aspectos. Es por esto que se hace necesario proteger adecuadamente a los compradores de viviendas, prevenir prácticas indeseables en el negocio de la construcción, regular los contratos de construcción y crear una oficina que se ocupe de promover los objetivos de esta ley."

de viviendas. Dicho artículo reconoce al comprador optante seis causas de resolución del contrato de opción y tres al constructor. (⁴) Tanto para los casos de resolución de contratos de opción como el de compraventa por parte del constructor (Art. 10, incisos (g) (4) y (j)) la ley remite a las partes a las convenciones y pactos del contrato. Con gran claridad ordena el inciso (g) (4) (17 L.P.R.A. sec. 510 (g) (4)):

"(4) En los casos de resolución de contratos de opción por parte del urbanizador o constructor, los contratantes se atendrán a lo dispuesto en el contrato en cuanto a la penalidad o daños líquidos se refiere."

---

(⁴)  .    .    .    .    .    .    .    .
"(f) Causas que motivan la resolución del contrato de opción por parte del optante:

(1) En cualquier momento en que éste perciba que la unidad que se le está construyendo o haya de entregársele se diferencia en modo sustancial de la propuesta unidad a base de la cual él compró;

(2) cuando el urbanizador o constructor, después de habérsele requerido, se haya negado o no le haya podido mostrar los planos y las especificaciones de la unidad de vivienda;

(3) si transcurre más de un año, a partir de la fecha en que se otorgó el contrato de opción, en otorgarse el contrato de compraventa;

(4) si el urbanizador o constructor le notifica que el precio original de la vivienda ha sido aumentado;

(5) si al inspeccionar la vivienda, de estar ya construida, observa que la misma tiene defectos de construcción según éstos sean definidos en el reglamento que a tal fin promulgue el Director, y el constructor se niega a corregirlos al ser requerido para ello;

(6) si se le notificara, por el urbanizador o constructor, o por cualquier otra persona autorizada, que la firma o institución mediante la cual se tramitó su solicitud de préstamo hipotecario denegó la concesión del mismo para la compra de la vivienda.

(g) Causas que motivan la resolución del contrato de opción por parte del urbanizador o constructor.

(1) Cuando el optante no haya depositado la cantidad de dinero requerida por el urbanizador o constructor dentro del tiempo que se disponga en el contrato.

(2) Si el optante le notifica por escrito al urbanizador o constructor que no tiene interés en seguir con los trámites de compra de la vivienda.

(3) Si el optante ha tardado más de treinta (30) días, desde la fecha en que se le haya requerido por escrito para firmar, en comparecer a firmar el contrato de compraventa."

Ya anteriormente la Ley ha autorizado la deducción de una cantidad fija por el urbanizador en caso de incumplimiento por el comprador en el texto del Art. 10 (c) (5) que transcribimos:

"(c) El contrato de promesa de compraventa o el de compraventa . . . además dispondrá:

(5) la cantidad que el vendedor podrá deducir de los pagos efectuados por el comprador bajo el contrato de compraventa, si dicho contrato se resolviese por haber faltado el comprador al cumplimiento de sus obligaciones bajo el mismo." (17 L.P.R.A. sec. 510.)

En su minucioso plan para reglamentar la compraventa de viviendas protegiendo la parte más débil en la operación, deteniéndose en su protección del consumidor sólo frente al imperativo cumplimiento por parte de éste de depositar el anticipo de precio, la ley sustituyó por penalidad líquida la sanción adscrita a la resolución de las obligaciones recíprocas, a saber, cumplimiento específico o resarcimiento de daños y abono de intereses en ambos casos (Art. 1077 del Código Civil (31 L.P.R.A. sec. 3052)), dejando libre al comprador y al urbanizador para pactar o preconvenir la sanción por incumplimiento del primero. Este método para resolver la obligación tiene para el comprador la ventaja de darle voz y participación directa en la estipulación de una cantidad determinada que ha de pagar por su incumplimiento y que podrá rechazar rehusando firmar el contrato con la misma libertad que rehusaría convenir la compra de una casa cuyo precio estima exhorbitante o fuera de sus medios económicos. Sabe de antemano el comprador que no podrá exigírsele una cantidad mayor en una acción civil por la urbanizadora, que la penalidad por su incumplimiento no será asunto de estimación judicial, sino consecuencia de su preordenada voluntad y que no se enfrentará a las demás contingencias gravosas de un pleito, incluyendo el costo de su propia defensa. Para la urbanizadora el preconvenio en la cláusula

penal le facilita la ordenada gestión y administración de su negocio, que es construir casas y no litigar en los tribunales, y la releva de tener que probar daños en cada caso específico, una empresa difícil y a veces imposible pues se trata de reducir a cantidades exactas el impacto económico en el desarrollo general del proyecto del desistimiento por compradores que tuvieron solares y obras reservadas por un apreciable período de tiempo, negando al constructor la oportunidad de hacer un mejor negocio, mientras tiene que correr con los cuantiosos intereses de financiamiento, costo operacional omnipresente en la industria de la construcción.

Esta intención y diseño estatutario se concretan a cabalidad en el contrato entre Levitt & Sons y su comprador optante Muñoz González cuya cláusula 22 en lo pertinente dice:

"En los casos . . . [en que el comprador le notifique a la vendedora que no tiene interés en seguir con los trámites de compra de la vivienda, o deje de cumplir con sus obligaciones contractuales] y en cualquier otro caso de resolución por causas no imputables a la vendedora, ésta devolverá al comprador sus depósitos, sin intereses, pero podrá retener por concepto de daños liquidados las siguientes cantidades: (1) el 2% del precio de compraventa de viviendas cuyo valor no exceda de $30,000 y el 3% cuando sea mayor de $30,000, siempre que el correspondiente préstamo sea o vaya a ser tramitado a través de los gobiernos de Estados Unidos, o de Puerto Rico, o de cualesquiera de sus instrumentalidades; (b) 5% del precio de venta si se trata de préstamos convencionales o de venta en efectivo. Igualmente podrá retener cualquier otra cantidad convenida anteriormente en este contrato y que no esté en conflicto con la ley o los reglamentos."

La posición del recurrido Secretario del Departamento de Asuntos del Consumidor adoptada por el Tribunal Superior al efecto de que ésta no es cláusula penal sino estipulación que exige prueba de daños, es insostenible por dos razones: primera, porque dicha cláusula no es más que la traslación al contrato de la autorización legislativa concedida por el

Art. 10 (c) (5) de la Ley Núm. 130 citada para una "cantidad que el vendedor podrá deducir de los pagos efectuados" si el contrato se resolviese por incumplimiento del comprador; y segunda, por ser de meridiana inteligencia que existiendo una acción resolutoria bajo el Art. 1077 del Código Civil que exige prueba de daños, se pacta para hacer innecesaria esa prueba, (5) como así resulta de las circunstancias que prohijaron el aludido contrato. No era necesario darle el nombre de cláusula penal, toda vez que la pena convencional existe no solo cuando se pacta con este nombre, sino también cuando se pacta cualquier otra estipulación que lleve al mismo resultado, por no ser necesario una fórmula especial, debiendo determinarse por su propia índole con relación a la obligación sancionada con ella. (Sentencia de 3 marzo de 1956, España.) Aun así el legislador no dejó dudas de la naturaleza de este medio de aseguramiento cuando dispuso que "los contratantes *se atendrán* a lo dispuesto en el contrato en cuanto a la *penalidad o daños líquidos* se refiere." (17 L.P.R.A. sec. 510 (g) (4).) (Énfasis suplido.)

■ La preventiva liquidación de daños por comprador y vendedora en la cláusula 22 del contrato es típica de las obligaciones con cláusula penal, en las que la pena sustituye a la indemnización de daños y al abono de intereses. Art. 1106 del Código Civil (31 L.P.R.A. sec. 3131).

Hemos examinado antes en esta opinión la conveniencia que para ambas partes representa la determinación líquida del daño *a priori* y su patente utilidad en la compraventa de viviendas que llevó al legislador a incorporarla al estatuto regulador de estos contratos. Se confirma lo expresado por

---

(5) Para seguir el procedimiento ortodoxo dispuesto en ley no hay que pactar. Se recurre a la cláusula penal en los contratos precisamente para obviar la prueba de daños. El Código atribuye a tal cláusula como normal este sentido liquidatorio. Arts. 1106 y 1107; *Caballero* v. *Kogan*, 73 D.P.R. 666 (1952); *Clausells* v. *Salas*, 51 D.P.R. 89, 95 (1937); *C. M. & Finance Corp.* v. *Cooley*, 103 D.P.R. 6 (1974).

este Tribunal ". . . la fórmula verbal que se emplee en el contrato no es lo que provee normalmente la clave. Hay que precisar primero las funciones que generalmente cumple la cláusula penal y escudriñar su impacto en cada caso específico. S. de 6 de febrero de 1906 (Esp.) Espín, *supra*, 150. Respecto a las funciones de la cláusula penal nos hemos expresado antes habiendo señalado que 'las dos funciones más importantes atribuidas a la cláusula penal es la de asegurar el cumplimiento de una obligación— . . . [Citas] y la de servir como liquidadora del daño, según Castán, *evaluar por anticipado* los perjuicios que habría de ocasionar al acreedor el incumplimiento inadecuado [*sic*] de la obligación—. . . .' " *Simonet* v. *Igaravídez*, 90 D.P.R. 1, 9 (1964) ; *R. C. Leasing Corp.* v. *Williams Int. Ltd.*, 103 D.P.R. 163 (1974). (Énfasis nuestro.)

▪ Se califica en nuestro Derecho como cláusula penal la estipulación de carácter accesorio, establecida en un contrato, con la finalidad de asegurar el cumplimiento de la obligación principal, en virtud de la que el deudor de la prestación que se trata de garantizar viene obligado a pagar por lo general determinada cantidad de dinero. (Sentencia de 11 de marzo de 1957, España.)

▪ Como remedio a la posible agravación de la responsabilidad del deudor, ya que dicha cláusula tiende a reforzar el vínculo ofreciendo al acreedor un medio más intensamente eficaz que la acción derivada del crédito simple, y para atemperar lo que de punitivo tenga la cláusula penal en cuanto el pacto trascienda los daños derivados del incumplimiento, faculta el Código Civil al juez para modificar equitativamente la pena si la obligación principal hubiera sido en parte o irregularmente cumplida por el deudor. Art. 1108. En el presente caso no entra en juego esa función judicial moderadora toda vez que la penalidad (2% de $29,780.00) guarda proporción justa con los daños previsibles causados por el incumplimiento, sin que imponga una onerosa carga punitiva. Así

también debió entenderlo en no menos de dos ocasiones el comprador Muñoz González, pues libremente convino la liquidación por anticipado de daños al suscribir el contrato y silenció toda petición de modificación bajo el Art. 1108 al solicitar remedio contra la retención de depósito por la urbanizadora.

■ Siendo la cláusula 22 que autorizó la retención del depósito por la constructora recurrente de naturaleza penal por la clara y terminante voluntad de las partes, y ajustada estrictamente a la Ley de la Oficina del Oficial de Construcción, citada, no viene obligada la recurrente Levitt & Sons a probar sus partidas de daños, y puede retener cualquier depósito que no exceda del 2% del precio total acordado en el contrato de promesa de compraventa. ([6])

------

[6] La Ley Núm. 130 del Oficial de Construcción fue enmendada por la Ley Núm. 160 de 9 de junio de 1976 creando un nuevo estado de derecho que se ajusta a las contenciones aquí sostenidas por el recurrido sobre requisito de prueba y facultad del Secretario de DACO, como indica el nuevo texto que copiamos:

| Ley Núm. 130 | Enmiendas de 1976 |
|---|---|
| Art. 10(b)(9) "El contrato de opción contendrá . . . : | Art. 10(b)(9) "El contrato de opción contendrá . . . : |
| "(9) la cantidad que el vendedor podrá deducir del anticipo o precio de la opción, retener para sí, por concepto de *daños liquidados*, en el evento de que, sin que medie falta por parte del vendedor, el comprador decida no ejercitar su contrato de opción." | "(9) la cantidad máxima que el vendedor podrá deducir y retener del anticipo o precio de la opción por concepto de daños cuando, sin que medie falta por parte del vendedor, el comprador decida no ejercitar su contrato de opción." |
| Art. 10(g) "Causas que motivan la resolución del contrato de opción por parte del urbanizador o constructor. . . . | Nota: Se elimina el concepto "daños liquidados". |
| (4) En los casos de resolución de contratos de opción por parte del urbanizador o constructor, los contratantes *se atendrán a lo dispuesto en el contrato en cuanto a la penalidad o daños líquidos se refiere.*" (Bastardillas nuestras.) | Se introduce el de cantidad máxima.<br><br>Se deroga el inciso 10(g)(4) y se elimina el concepto de penalidad o *daños líquidos* y se sustituye por un nuevo texto que exige prueba de daños a ser *estimada* por el Secretario de DACO así: |

*Se anularán la sentencia en revisión dictada el 28 de octubre de 1975 por la Sala de San Juan del Tribunal Superior, y la resolución administrativa de 18 de diciembre de 1974 y demás actuaciones del Secretario del Departamento de Asuntos del Consumidor. Revocada.*

El Juez Presidente Señor Trías Monge concurre en el resultado. El Juez Asociado Señor Martín no interviene.

Art. 10(g) "Causas que motivan la resolución del contrato de opción por parte del urbanizador o constructor:

(1) . . . . . . .

(j) En los casos de resolución de contratos de opción de promesa de compraventa y de compraventa por parte del urbanizador o constructor, los contratantes se atendrán a lo dispuesto en el contrato en cuanto a la cuantía máxima que por concepto de daños pueda retener el urbanizador o constructor, siempre que ésta no exceda de aquella cantidad máxima que mediante Reglamento fije el Secretario del Departamento de Asuntos del Consumidor. Disponiéndose que la fijación de una cuantía máxima en el contrato no eximirá al urbanizador o constructor de probar en una vista administrativa los daños realmente sufridos a consecuencia de la resolución o incumplimiento del contrato. El Secretario adjudicará el monto de los daños, pudiendo conceder por los mismos una compensación que no excederá la cuantía máxima dispuesta en el contrato. No obstante lo anterior y a partir de la vigencia de esta ley, el Secretario podrá mediante Reglamento fijar el monto de las cuantías a ser retenidas sin necesidad de probar daños."