La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Nos corresponde determinar si una cláusula en un con-trato de adhesión, que impone el pago de gastos y honora-rios de abogado en que incurra la parte acreedora en su gestión de cobro de dinero por incumplimiento del pago acordado, constituye una cláusula penal. De contestar en la afirmativa, nos compete discernir si el pago convenido de 33% en concepto de dicha cláusula resulta razonable o no. Tras examinar la cláusula y el contrato en controversia, la doctrina civilista y la jurisprudencia de este Tribunal sobre los preceptos de la contratación entre personas pri-vadas, concluimos que la mencionada cláusula constituye una cláusula penal válida y que el cargo de 33% convenido es razonable.
I
El 24 de septiembre de 2005 el Sr. Jesús Casiano Rivera solicitó un préstamo personal de $25,000 en la Cooperativa de Ahorro y Crédito Sabaneña (la Cooperativa). El prés-tamo fue aprobado el 7 de octubre de 2005 y, para eviden-ciar, esa deuda el señor Casiano Rivera y la Cooperativa firmaron un pagaré.(1) Dicho pagaré contiene una cláusula que establece una penalidad en ocasión de que el señor Casiano Rivera incumpla con su obligación contractual. La cláusula establece:
COSTAS, GASTOS Y HONORARIOS: Nosotros nos obliga-mos a pagar a la Cooperativa, o al tenedor por endoso de este pagaré, todos los gastos que se incurran en las gestiones de cobro de este preestamo [sic], más honorarios de abogados en una cantidad igual al 33% de la cantidad del préstamo que se indica al comienzo de este pagaré.(2)
*172 Posteriormente, el recurrido incumplió con su obligación. A tales efectos, la Cooperativa realizó una ges-tión de cobro mediante carta de 31 de agosto de 2009,(3) pero ante la falta de pago, instó una demanda en cobro de dinero el 19 de octubre de 2009. En la demanda alegó que la parte demandada le adeudaba $19,435.84, más “el 33% del principal para costas y honorarios de abogado que as-cienden a $8,250.00”. (Énfasis en el original.)(4)
Ante la incomparecencia del recurrido, el Tribunal de Primera Instancia le anotó la rebeldía y subsiguiente-mente dictó sentencia en rebeldía, en la que declaró “ha lugar” la demanda. El 3 de agosto de 2010 —notificado el 11 del mismo mes y año— el foro de instancia sentenció al señor Casiano Rivera a pagar a la peticionaria “la suma de $19,435.84 y una cantidad adicional de $6,413.55, equiva-lente al treinta y tres por ciento (33%) de lo adeudado, por concepto de costas, gastos y honorarios de abogados”.(5) El 25 de agosto de 2010 el recurrido solicitó la reconsideración del dictamen, pero el 10 de septiembre de 2010 el tribunal de instancia notificó su denegatoria.
Inconforme, el señor Casiano Rivera acudió ante el Tribunal de Apelaciones y alegó que la partida impuesta en concepto de gastos, costas y honorarios de abogado era ex-cesiva, exagerada y abusiva, particularmente cuando se impuso en virtud de un contrato de adhesión donde él no intervino en su redacción. Además, señaló que la partida era excesiva debido a que la Cooperativa no se opuso du-rante el pleito, puesto que la sentencia se dictó en rebeldía por su incomparecencia.
Así las cosas, el 2 de febrero de 2011 el Tribunal de Apelaciones notificó una sentencia en la que dejó sin efecto la parte del dictamen del Tribunal de Primera Instancia que imponía el pago de $6,413.33 en concepto de gastos, *173 costas y honorarios de abogado. El Tribunal de Apelaciones concluyó que la cláusula en controversia era inválida por estimar irrazonable el por ciento contratado, lo que que-branta el orden público. En consecuencia, ordenó al foro de instancia establecer una cuantía razonable.
El 4 de marzo de 2011 la Cooperativa presentó el re-curso de certiorari ante este Foro y el 14 de junio de 2011 notificamos al recurrido una Resolución en la que le solici-tamos que mostrara causa por la que no debíamos expedir el recurso solicitado. El señor Casiano Rivera presentó oportunamente ante esta Curia un escrito en oposición al recurso presentado, en donde alegó la irrazonabilidad de la cláusula pactada y adujo que, por ser un contrato de adhe-sión con un por ciento excesivo para honorarios de abo-gado, se debía declarar nula dicha cláusula por violar el orden público. Contando con la comparecencia de ambas partes, procedemos a resolver.
II
La controversia de autos nos invita a examinar el con-cepto de razonabilidad de las cláusulas penales en los con-tratos de adhesión y la función moderadora de los tribuna-les ante estas cláusulas.
A
La teoría contractual que rige en nuestra jurisdicción dispone el principio de libertad de contratación o autonomía de la voluntad. El principio de pacta sunt servanda lo recoge expresamente el Código Civil de Puerto Rico: “Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público”, Art. 1207, 31 L.P.R.A. sec. 3372; “Las obligaciones que nacen de los contratos tienen fuerza de ley entre las *174 partes contratantes, y deben cumplirse al tenor de los mis-mos”, Art. 1044, 31 L.P.R.A. sec. 2994. Este principio, con-siderado como axioma del liberalismo económico, permite expandir el campo previsible de los legisladores al permitir introducir en las relaciones contractuales variedades nove-les y atípicas producto del imaginario humano. J.L. Concepción Rodríguez, Derecho de Contratos, 2003, pág. 35. A pesar de ello, el principio de libertad contractual no es irrestricto y está sujeto a la intervención de los tribunales, según dimana del propio Código Civil. Art. 1207 del Código Civil, supra. Véase, también, F. Puig Peña, Compendio de Derecho Civil Español, 3ra ed. rev., Madrid Eds. Pirámide, 1976, Vol. III, págs. 338-342.(6)
B
El derecho de crédito faculta al acreedor para exigir del deudor una obligación de dar, hacer o no hacer una cosa —Art. 1041 del Código Civil, 31 L.P.R.A. sec. 2991— y nuestro Código Civil provee al acreedor ciertos mecanismos para proteger y garantizar ese derecho de crédito. Estas garantías, en parte, tienen la encomienda de “estimular la voluntad del obligado para que realice la prestación debida”. J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed. rev., Barcelona, Ed. Bosch, 1985, T. I, Vol. II, pág. 449.
Así, como una garantía del derecho de crédito, encontra-mos en el Código Civil la llamada “cláusula penal”. Arts. 1106-1109 del Código Civil, 31 L.P.R.A. sees. 3131 — 3134. A diferencia de otros códigos civiles —como el francés y el quebequés— nuestro Código Civil no define específica-mente lo que constituye una cláusula penal. (7) Empero, se- *175 gún la jurisprudencia y la doctrina, se ha definido dicha cláusula como “una convención accesoria a una obligación principal mediante la cual se promete realizar una presta-ción, generalmente pecuniaria, para el caso en que una de las partes no cumpla o cumpla mal o irregularmente lo prometido”. (Enfasis suprimido.) J.R. Vélez Torres, Derecho de Obligaciones, 2da ed., San Juan, Programa de Educación Jurídica Continua de la Facultad de Derecho de la U.I.A., 1997, pág. 299.(8)
Se han destacado dos funciones de la cláusula penal: (1) asegurar el cumplimiento de una obligación y (2) evaluar por anticipado los peijuicios que habría de ocasionar al acreedor el incumplimiento de la obligación. R.C. Leasing Corp. v. Williams Int. Ltd., 103 D.P.R. 163 (1974). La capacidad de preestimar los daños en sustitución del método convencional y supletorio que fija la acción resolutoria del Artículo 1077 del Código Civil, 31 L.P.R.A. sec. 3052, en donde se exige probar los daños, la provee el propio Artículo 1106 del Código, al prescribir que la pena sustituirá la indemnización de daños. Levitt and Sons of P.R., Inc. v. D.A.C.O., 105 D.P.R. 184, 192 (1976). En otras palabras, el convenio de una cláusula penal redunda en la ausencia de tener que probar los daños que sufrió el acreedor por el incumplimiento de la obligación. C.M. & Finance Corp. v. Cooley, 103 D.P.R. 6, 9-10 (1974).
Esta cualidad anticipatoria de la cláusula penal y su naturaleza in terorrem tiene, no obstante, un límite im-puesto por el Artículo 1108 del Código Civil, 31 L.P.R.A. sec. 3133, que faculta al tribunal a modificar equitativa-mente la pena cuando la obligación haya sido satisfecha en *176 parte o irregularmente. Levitt and Sons of P.R., Inc., supra, pág. 193. Sin embargo, la facultad moderadora de los tribunales debe usarse sólo con gran cautela y justificación, pues la acción de limitar la autonomía de la voluntad de los contratantes debe ejercerse únicamente en circunstancias extraordinarias. Jack’s Beach Resort, Inc. v. Cía. Turismo, 112 D.P.R. 344, 350 (1982).
Por último, nos hacemos eco de lo expresado anterior-mente por este Tribunal con respecto a que “ ‘la fórmula verbal que se emplee en el contrato no es lo que provee normalmente la clave. Hay que precisar primero las fun-ciones que generalmente cumple la cláusula penal y escu-driñar su impacto en cada caso específico’ ”. Levitt and Sons of P.R., Inc., supra, pág. 193.
C
El presente caso requiere que comentemos sobre la va-lidez de un contrato de adhesión con cláusula penal. Al hablar sobre los contratos de adhesión, resulta imperativo que comentemos sobre otro aspecto paralelo: la interpreta-ción de los contratos.
Los contratos de adhesión son
“... aquellos en que el contenido, esto es, las condiciones de la reglamentación son obra de una sola de las partes, de tal modo que el otro contrayente no presta colaboración alguna a la formación del contenido contractual, quedando así susti-tuida la ordinaria determinación bilateral del contenido del vínculo por un simple acto de aceptación o adhesión al es-quema predeterminado unilateralmente.” Maryland Cas’y Co. v. San Juan Rac’g Assoc. Inc., 83 D.P.R. 559, 566 (1961), citando a J. Castán Tobeñas, Derecho Civil español, común y foral, 8va ed., Madrid, Ed. Reus, 1954, T. 3, pág. 332.
La norma de este Tribunal ha sido consistentemente que si bien los contratos de adhesión son válidos en *177 nuestra jurisdicción, la interpretación de sus disposiciones se hará favorablemente hacia la parte que nada tuvo que ver con su redacción. Herrera v. First National City Bank, 103 D.P.R. 724, 727 (1975); Ulpiano Casal, Inc. v. Totty Mfg. Corp., 90 D.P.R. 739, 744 (1964); Maryland Cas’y Co., supra.
Sin embargo, “[e]l hecho de que un contrato sea de ad-hesión ... significa tan solo que se analizará del modo más favorable a la parte más débil, ... pero no que se interpre-tará de modo irrazonable”. (Enfasis suplido.) R.C. Leasing Corp., supra, pág. 167. Por tal motivo, es un error conceptual que los contratos de adhesión se consideren nulos me-ramente por ser redactados por una sola de las partes. Véase C.R.U.V. v. Peña Ubiles, 95 D.P.R. 311, 314 (1967). Ante tales contratos, la función principal de un tribunal debe dirigirse a evaluar la presencia de cláusulas ambiguas. En ausencia de ambigüedad, el contrato se in-terpretará según sus términos. S.L.G. Ortiz-Alvarado v. Great American, 182 D.P.R. 48 (2011); Martínez Pérez v. U.C.B., 143 D.P.R. 554 (1997). Independientemente del tipo de cláusula en cuestión —bien sea una cláusula penal u otra dispositiva— el método de interpretación descrito se aplicará por igual. Despejada la apariencia de ambigüe-dad, el tribunal entonces procederá a evaluar la razonabi-lidad de lo allí convenido.
Examinada la doctrina contractual antes esbozada, pa-semos a ver su aplicación a los hechos de la controversia de autos.
III
El asunto principal en esta controversia es evaluar la razonabilidad de lo convenido, por lo que dista de realizar una función interpretativa de las cláusulas contractuales. Veamos.
*178 A
En las comparecencias del señor Casiano Rivera ante los tribunales inferiores y este Tribunal, su argumentación se ha reducido tautológicamente a decir que el contrato convenido es de adhesión y que él no tuvo la oportunidad de intervenir para fijar los honorarios. Como indicamos an-teriormente, los contratos de adhesión tienen validez en nuestra jurisdicción. Su naturaleza adhesiva no es inhe-rentemente nula. R.C. Leasing Corp., supra. Sin dudas, el pagaré firmado entre el recurrido y la Cooperativa es un contrato de adhesión, porque surge del expediente la falta de participación del recurrido en su redacción.
Nos corresponde, pues, evaluar si es ambigua la cláu-sula de costas, gastos y honorarios que dispone que, en caso de incumplimiento, el deudor asumirá “todos los gas-tos que se incurran en las gestiones de cobro de este pre-estamo [sic], más honorarios de abogados en una cantidad igual al 33% de la cantidad del préstamo ...”.(9) Coincidi-mos con la apreciación del Tribunal de Apelaciones con re-lación a dicha cláusula:
Observada la cláusula antes transcrita, no encontramos en ella características que nos hagan concluir que sea una [sic] obscura o ambigua. Ante esta realidad, a pesar de ser una [sic] claramente adhesiva no es posible determinar que por esta razón sea nula; la cláusula está redactada de manera clara y su lenguaje es uno [sic] de fácil entendimiento. (Enfasis en el original.)(10)
De una lectura concienzuda resulta evidente la ausen-cia de ambigüedad. Se estipula que en caso de incumpli-miento, el señor Casiano Rivera pagará por los gastos y honorarios de abogado en que incurra la Cooperativa en su gestión de cobro del préstamo. Llegada a la conclusión de *179 que la cláusula no es ambigua, es improcedente aplicar los métodos de interpretación en contratos de adhesión, donde los tribunales habrán de favorecer a la parte que no inter-vino en su redacción.
B
Cabe preguntarnos en esta ocasión si la cláusula de costas, gastos y honorarios de abogado del pagaré constituye o no una cláusula penal. La importancia de responder primero a esa pregunta ilustrará a un tribunal sobre las normas a utilizar cuando se enfrente a una cláusula contractual. Por ejemplo, de contestar en la afirmativa, se utilizará la normativa provista por el Código Civil en cuanto a las cláusulas penales. Arts. 1106-1109 del Código Civil, supra. Para determinar si una cláusula es penal hay que ver su funcionalidad, mas no la nomenclatura empleada. Jack’s Beach Resort, Inc., supra, pág. 349. La funcionalidad de la cláusula debe medirse en virtud de: (1) su capacidad para anticipar daños sin tener que probarlos posteriormente en caso de incumplimiento y (2) sus propósitos coercitivos y punitivos para evitar el incumplimiento (su naturaleza in terrorem).
Al examinar la cláusula en cuestión, observamos que su función principal es la preestimación de los daños y gastos en que la Cooperativa incurriría en su gestión de cobrar la obligación incumplida. Esos gastos, claro está, incluyen los honorarios de abogado. En cuanto a la segunda función descrita, cobrar el 33% de la deuda cumple con sus propó-sitos de disuadir el incumplimiento. En consecuencia, no dudamos que estemos frente a una cláusula penal.
A pesar de que la cláusula incluye una partida para ho-norarios de abogado, no la exime de su cualidad de cláu-sula penal ni estimamos que sea contraria a derecho por esa disposición. Como sabemos, este pacto fue entre la Coo-perativa y el recurrido, por lo que los honorarios que se *180 cobren producto de este convenio constituyen una indem-nización para la Cooperativa, independientemente de los honorarios que ésta haya pactado con sus abogados. Con relación a las cláusulas entre partes privadas que pactan honorarios de abogado, coincidimos con el honorable juez Sigfrido Steidel Figueroa, al exponer:
[E]n algunos tipos de relaciones contractuales se establece un porcentaje específico para honorarios de abogado en caso de incumplimiento por parte del deudor. Frecuentemente esos porcentajes fluctúan entre un 5% del monto total del principal adeudado hasta un 30%. Se podría argumentar que esta úl-tima cifra es, por lo general, irrazonable, ya que la gestión de cobro de dinero es esencialmente sencilla .... Sin embargo, este tipo de pacto reviste caracteres de una cláusula penal cuya finalidad no es exclusivamente establecer el monto de unos honorarios de abogado, sino también proteger al acreedor de ciertos riesgos que la obligación pactada genera, a la vez que representa un disuasivo para el incumplimiento del deudor. Además, se trata de una disposición incluida como parte de la contratación original sin que necesariamente el abogado que inicia las gestiones judiciales de cobro haya te-nido participación. ... El abogado más bien actúa incidental-mente en las gestiones de cobro. (Escolio omitido.) S. Steidel Figueroa, Ética y responsabilidad disciplinaria del abogado, San Juan, Pubs. JTS, 2010, págs. 164-165.
Determinado que se trata de una cláusula penal, debe-mos entonces examinarla al amparo del Artículo 1108 del Código Civil. Esto es, debemos razonar si se justifica la modificación de la pena por haberse pagado parte de la deuda. En la demanda original presentada por la Coopera-tiva, ésta solicitó como remedio que se aplicara ad verbatim la cláusula en controversia en cuanto a que el 33% debe aplicarse al monto del préstamo original. En otras palabras, la peticionaria solicitaba aplicar el 33% a $25,000, para un total de $8,250 en gastos y honorarios. Acertadamente, el Tribunal de Primera Instancia modificó la pena para aplicar el 33% al monto adeudado al momento de presentar la demanda, para un total de $6,413.55. No obstante, el recurrido solicita que nuestra función modifi- *181 cadora se extienda, no a la aplicación de la pena, sino a la pena en sí misma. Para ello nos corresponde ponderar la razonabilidad de la pena.
C
Llegamos al planteamiento central del caso: ¿Acaso pac-tar el pago de 33% del monto para gastos, costas y honora-rios de abogado es excesivo, abusivo y ofende el orden pú-blico contractual? ¿O, por el contrario, es una cuantía razonable?
El Tribunal de Apelaciones concluyó que ese porcentaje es irrazonable y contraviene el orden público. Erró dicho tribunal, máxime cuando omitió toda la doctrina contractual sobre las cláusulas penales que aplican a la controver-sia de autos. Según hemos esbozado en esta Opinión, al enfrentarnos a una cláusula luce de carácter penal, debe-mos realizar un examen de su funcionalidad. De ser una cláusula penal, no podemos soslayar el carácter punitivo de esas cláusulas. Hacer lo contrario sería restar eficacia a un mecanismo creado legislativamente para garantizar y fortalecer los negocios jurídicos.
No ignoramos la capacidad de los tribunales de interve-nir en las relaciones contractuales y dar remedios en equidad. Véanse: BPPR v. Sucn. Talavera, 174 D.P.R. 686 (2008); Jack’s Beach Resort, Inc., supra. Empero, esas in-tervenciones deben proceder con sensatez y cautela —id.— y solamente cuando una de las prestaciones resulte exce-siva, abusiva y una desproporción intolerable en las prestaciones. BPPR, supra, págs. 710-711.(11)
Cuando un tribunal interviene con las relaciones con-tractuales, debe sopesar los valores jurídicos afectados con *182 su intervención. En una controversia como la de autos, por ejemplo, se deben ponderar valores como la autonomía de la voluntad y la certeza de los negocios jurídicos. La auto-nomía de la voluntad gobierna todo el desarrollo de la vida contractual. Puig Peña, op. cit., pág. 338. Interferir con ella sin justificación alguna es un acto de trastocar una de las bases de nuestro ordenamiento jurídico, que sostiene gran parte de las relaciones sociales y comerciales. “[L]a inter-vención moderadora del tribunal con la autonomía contractual de las partes se da únicamente en circunstancias ex-traordinarias ... [y] ha de ejercerse con extrema cautela y patente justificación por su efecto lesivo a la estabilidad de los contratos y a la seguridad jurídica.” López de Victoria v. Rodríguez, 113 D.P.R. 265, 271 (1982). Asimismo, interferir con la doctrina de pacta sunt servanda es el equivalente de modificar o hasta anular una ley; no olvidemos que los con-tratos son ley entre las partes. Art. 1044 del Código Civil, supra.
Una cláusula que impone una pena de 33% para gastos y honorarios de abogado en caso de incumplimiento contractual no justifica nuestra intervención con la estabili-dad de los negocios jurídicos. El recurrido sostiene que es excesivo y abusivo. Sin embargo, y a modo de ejemplo, al examinar varias leyes que fijan los costos de honorarios de abogado en distintas causas de acción, vemos que el por-centaje fluctúa entre el 20% y el 33%.(12)
Por consiguiente, el 33% pactado entre la Cooperativa y el señor Casiano Rivera no nos parece que ofende la razo-nabilidad ni el orden público contractual. Asumir la pos- *183 tura del recurrido y validar la decisión del Tribunal de Apelaciones convierte injustificadamente en inoperante a la cláusula penal. La pretensión del recurrido es fijar los honorarios a base de quantum meruit (tanto como se me-rece) cuando alega que, debido a su incomparecencia y, por consiguiente, el dictado de una sentencia en rebeldía, se deben reducir los honorarios de abogado por que la Coope-rativa obtuvo una sentencia sin oposición alguna. Esta pre-tensión, más que una moderación —como sostiene el Tribunal de Apelaciones— es una anulación de una cláusula válidamente convenida. Jack’s Beach Resort, Inc., supra, págs. 352-353.
D
En cuanto a la aplicación que hizo el Tribunal de Apela-ciones de la Regla 44.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, nos limitaremos a decir que erró dicho foro al aplicar la regla y soslayar el convenio habido entre las partes. Ese convenio era el sustituto de la preestimación de los honorarios de abogado y la posible temeridad en que pudiera ocurrir el demandado. Por esa razón, la controver-sia había que examinarla según la teoría contractual y no según las reglas procesales.
IV
En la controversia de autos, el 33% pactado entre la Cooperativa y el señor Casiano Rivera fue el producto de la autonomía de sus voluntades. Intervenir con ella sin justi-ficación suficiente sería una intromisión indebida que atenta contra el principio de pacta sunt servanda. Más aún, tal proceder equivale a eludir el propósito in terrorem y de preestimación de daños de una cláusula penal. Puesto que estimamos razonable el porcentaje convenido, que no atenta contra el orden público contractual y que no se jus- *184 tífica la intervención moderadora de los tribunales, deja-mos sin efecto la sentencia emitida por el Tribunal de Ape-laciones que ordenó al Tribunal de Primera Instancia a modificar la cuantía en concepto de gastos y honorarios de abogado. Restablecemos así la sentencia emitida por el foro de instancia.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco concurrió y hace constar la expresión siguiente: “La Jueza Asociada Señora Pabón Charneco concurre con el resultado. No obs-tante, no concuerda con que este tipo de cláusula penal se aplique automáticamente en casos en que se alegue incum-plimiento con la obligación por razones económicas imprevistas.” Los Jueces Asociados Señor Rivera García y Señor Feliberti Cintrón concurrieron con el resultado sin opinión escrita. La Jueza Asociada Señora Fiol Matta no intervino.

 El pagaré, titulado “Pagaré de préstamo a plazos/divulgación de costos”, es un modelo preimpreso redactado en su totalidad por la Cooperativa. Apéndice, pág. 31.

 Apéndice, pág. 31.

 Íd., pág. 32.

 Íd., pág. 34.

 Íd., pág. 19.

 Otras limitaciones al principio de libertad contractual son la buena fe contractual, la equidad y la doctrina de rebus sic stantibus. Véase BPPR v. Sucn. Talavera, 174 D.P.R. 686 (2008).

 Véase el Artículo 1622 del Código Civil de Quebec, que dispone, en lo perti-nente: “A penal clause is one by which the parties assess the anticipated damages by *175 stipulating that the debtor will suffer a penalty if he fails to perform his obligation.” Por su parte, en el código francés se define “cláusula penal” como: “La clause pénale est celle par laquelle une personne, pour assurer l’exécution d’une convention, s’engage á quelque chose en cas d’inexécution.” Art. 1226 del Código Civil francés.

 Cabe señalar que a pesar de su parecido, no debe confundirse la figura de la cláusula penal con la figura de daños líquidos del common law anglosajón. P.F. Silva-Ruiz, La Cláusula Penal, LIV (Núm. 1) Rev. Jur. U.P.R. 89, 105-108 (1985). Véase, también, R.C. Leasing Corp. v. Williams Int. Ltd., 103 D.P.R. 163, 168 (1974).

 Apéndice, pág. 31.

 Sentencia del Tribunal de Apelaciones, KLAN201001487, de 31 de enero de 2011. Apéndice, pág. 14.

 Deseamos hacer hincapié en que el reconocimiento que hemos hecho a la capacidad interventora de los tribunales en las relaciones contractuales es reflejo de que no estamos dispuestos a aplicar automáticamente una cláusula penal, sino que ésta deberá ponderarse a la luz de los hechos de cada caso.

 Véase, e.g., Art. 1 de la Ley Núm. 9 de 8 de agosto de 1974, 4 L.P.R.A. see. 742 (establece que el máximo de honorarios de abogado permitido en casos de daños y peijuicios es 33% del producto final o 25% si el cliente es menor de edad o incapa-citado mental); See. 3 de la Ley Núm. 118 de 25 de junio de 1971, 32 L.P.R.A. see. 3343 (en los pleitos de clase por consumidores, los tribunales impondrán “una can-tidad razonable que no bajará de un 25% en concepto de honorarios de abogado”); Art. 41.110 del Código de Seguros, 26 L.P.R.A. see. 4111 (en acciones de daños y peijuicios por impericia médico-hospitalaria se establecen honorarios escalonados entre un 33% y 20%, según aumenta la cuantía de la indemnización).