C. BREWER PUERTO RICO, INC., demandante y recurrida, *v.* FRANCISCO VEGA OTERO, INC., demandada y recurrente.

*Número:* R-64-169     *Resuelto:* 1ro. de junio de 1965

---

*José M. Menéndez Monroig* y *John F. Malley,* abogados de la recurrente; *McConnell, Valdés & Kelley, Ramón Morán Loubriel* y *Pablo R. Cancio,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

PER CURIAM: En marzo de 1956 la Eastern Sugar Associates verbalmente convino con Francisco Vega Otero, Inc., en que vendería a ésta dos porciones de terreno radicadas en el Barrio Bairoa de Caguas, una de 2.77 cuerdas y la otra de 74 céntimos de cuerda por el precio de $9,000.00, pagadero "al otorgarse la escritura de compraventa y en todo caso no más tarde del día 15 de junio de 1956."

El día 22 de ese mes la Eastern Sugar Associates remitió una carta a Francisco Vega Otero, Inc., confirmando ese convenio verbal y en la cual se hacía constar que esas dos parcelas serían segregadas previamente de dos fincas distintas de mayor cabida y que Francisco Vega Otero, Inc., se comprometía a "gestionar y a obtener por su cuenta de la Junta de Planificación de Puerto Rico el permiso de lotificación necesario para el otorgamiento de la correspondiente escritura de segregación y compraventa, y asimismo a cumplir con todas las leyes, reglamentos u órdenes de dicha Junta de Planificación en relación con dichos terrenos."

Esa carta contenía otras condiciones a estipularse y terminaba con la siguiente oración:

"Sírvanse devolvernos la copia adjunta de esta carta debidamente firmada al calce evidenciando *su conformidad con los términos y condiciones arriba mencionados.*"

Estaba firmada por Manuel A. del Valle como Presidente de la entidad remitente. Francisco Vega Otero, Inc., expresó

por escrito su aceptación y conformidad el 4 de abril de 1956, a continuación de la firma del señor del Valle.

El precio fijado fue satisfecho por Francisco Vega Otero, Inc., en 1956 y la posesión material de ambas parcelas fue entregada a ella. No obstante haberse convenido en que esta corporación gestionaría la aprobación de las segregaciones, la Eastern Sugar Associates se tomó la iniciativa en ello y a mediados de 1956 empezó ante la Junta de Planificación de Puerto Rico la tramitación correspondiente en el Caso 57-076 Lot.

El 3 de enero de 1964, es decir cerca de unos ocho años después, C. Brewer de Puerto Rico, Inc., reclamando ser sucesora de Eastern Sugar Associates, inició ante la Sala de San Juan del Tribunal Superior, una acción sobre sentencia declaratoria para que se declarase que por no haberse obtenido la aprobación de las segregaciones—cuya gestión la Eastern tomó a su cargo—se declarara resuelto el convenio de 1956, o, en la alternativa, y por el mismo fundamento, que se declarara nulo o inexistente lo que ella había convenido con la otra parte en 1956.

A la demanda unió copia de la carta del 22 de marzo de 1956. Pero en esa copia aparece, después de la firma del Presidente del Valle y de la expresión de aceptación y conformidad de Francisco Vega Otero, Inc., un párrafo adicional que firma un tal Aragoneses como contralor de Eastern Sugar Associates, sin que conste la fecha en que se escribió, y que dice así

"*Nota*: Es entendido y convenido que en caso de que dentro de un período de tiempo razonable, a juicio de Eastern Sugar Associates, no hubiesen obtenido Uds. la dispensa de lotificación que haga posible la segregación de los terrenos arriba descritos, este compromiso de venta quedará sin efecto, y los Associates se obligan y comprometen a devolver a Uds. el precio de venta pagado, sin intereses de ninguna índole, quedando ambas partes

relevadas de todo ulterior compromiso u obligación bajo este convenio.

EASTERN SUGAR ASSOCIATES (A TRUST)

Por:

(Fdo.) *M. Aragoneses*
Comptroller."

El 21 de febrero de 1964 Francisco Vega Otero, Inc., solicitó la desestimación de la demanda por insuficiencia de sus alegaciones. Discutida esta cuestión, se declaró sin lugar la moción, expresándose en su resolución el Juez Polo, en parte, como sigue:

"La moción para desestimar radicada por la demandada en este caso tiene como fundamento el de que la cláusula resolutoria del contrato otorgado por las partes fue añadido al contrato después de firmado por la demandada.

"A la demanda se acompañó una copia fotostática de dicho contrato, así como carta del 13 de diciembre de 1963 abogado de la demandada, Sr. Julio Reguero. Dicho contrato y carta forman parte de la demanda y como a los efectos de la resolución de una moción para desestimar tenemos que considerar como ciertos los hechos alegados en la demanda, no tenemos otra alternativa que declarar sin lugar la moción para desestimar, ya que no surge de las alegaciones de la demanda que la mencionada cláusula hubiera sido puesta después de firmado el contrato como afirma la demandada. *Tal hecho tendría que ser objeto de prueba para dilucidarse en un juicio plenario.*"

La demandada contestó aceptando parte de las alegaciones y negando las demás. Expuso afirmativamente que la transcrita nota final de la carta del 22 de marzo de 1956 no formaba parte del convenio y que "la nota añadida al contrato luego de haber sido firmado el mismo por la demandada, se añadió con el único y sólo propósito de proteger a la demandada si ella no obtenía la autorización de la Junta de Planificación para realizar la segregación envuelta en la compraventa". Alegó también, como defensa, que "la tar-

danza en obtener el permiso de la Junta de Planificación de Puerto Rico se debe a la culpa de la demandante".

El 27 de mayo de 1964 solicitó la demandante que se dictara sumariamente sentencia a su favor fundada en que la Junta de Planificación había desaprobado las segregaciones de las dos parcelas objeto del. contrato de venta y que de acuerdo con la doctrina de *Soto* v. *Feliciano*, 80 D.P.R. 615 (1958), el contrato de compraventa resultaba radicalmente nulo y siendo ello así "ninguna de las partes está obligada por el mismo y procede que se devuelvan las prestaciones que hayan podido hacerse a virtud de dicho convenio". A su moción unió una declaración jurada de su vicepresidente en la que se hacía constar que la demandante había enviado a la demandada "un cheque por la cantidad de $9,000.00 en carácter de devolución del precio de una compraventa", que el objeto de la compraventa eran las dos parcelas a segregarse de otras de mayor cabida y que sus segregaciones respectivas nunca habían sido aprobadas y que "por el contrario, la Junta de Planificación ha denegado la aprobación de dichas segregaciones".

A esa solicitud se opuso la demandada en un escrito en que negó que la "Junta de Planes" desaprobara las segregaciones y que se había requerido a la demandante "el cumplimiento de varias condiciones antes de aprobar la segregación solicitada"; negó también que existiera un contrato de compraventa y que fuera aplicable el caso de *Soto* v. *Feliciano*, 80 D.P.R. 615 y el *E.L.A.* v. *De la Torre*, 87 D.P.R. 800 (1963); que expuso que estaba en condiciones de probar que el contrato era lícito.

La vista de la moción sobre sentencia sumaria fue celebrada el 26 de junio de 1964. La demandante, en esa vista no ofreció documento adicional u otra prueba en apoyo de la misma.

La demandada presentó una copia certificada de la resolución o informe de la Junta de Planificación, de fecha 1ro.

de agosto de 1956 desaprobando la segregación de "una *parcela de 0.74* cuerdas para agrupar a otra parcela con cabida de 2.77 cuerdas" y también una copia de otra resolución de esa Junta, de fecha 23 de mayo de 1957 en que se termina diciendo lo siguiente:

"Entiende esta Junta de Planificación de Puerto Rico que toda vez que existe un conflicto de títulos envuelto en este caso que impide la agrupación de la parcela a segregarse a la parcela marcada con la letra 'B' en el croquis levantado por el Ing. Juan Vázquez Caballero, este conflicto de títulos entre las partes debe dilucidarse en un Tribunal competente, toda vez que esta Junta no es el foro apropiado para entender en tal controversia.

"En virtud de lo anteriormente expuesto esta Junta de Planificación, se declara sin jurisdicción para entender en este caso y por lo tanto declara SIN LUGAR la moción de reconsideración incoada por el peticionario en este caso e informa que una vez dilucidado este conflicto estará en la mejor disposición para resolver el mismo."

Presentó además copia certificada de las "Conclusiones de Hechos, de Derecho y Sentencia" dictadas por el Tribunal Superior, Sala de Caguas en el caso de C. Brewer Puerto Rico, Inc. (en sustitución de Fajardo Eastern Sugar Associates, etc.) demandante v. Manuel Disdier Pacheco y su esposa María Alicia Torres, demandados, civil Núm. 58-1105, Sobre: Reivindicación.

El 2 de julio de 1964 el Juez Pérez Marrero de la Sala de San Juan del Tribunal Superior, dictó sentencia sumaria en la acción resolviendo que una vez demostrado que la Junta de Planificación había negado permiso para segregar una propiedad objeto de una venta, era forzoso concluir que no existía una controversia genuina de hecho a ser juzgada a base de la prueba descubierta por las partes en apoyo de sus alegaciones y que, ya se tratara de un contrato de promesa de venta o de uno de compraventa, era mandatorio declarar, de conformidad con los casos antes citados y la Ley Núm. 213 de 12 de mayo de 1942, que el contrato envuelto era nulo "por

tratarse de *una parcela de terreno que forma parte de otra de mayor cabida* sin haberse autorizado previamente su segregación por la Junta de Planificación." Al efecto declaró "nulo el contrato celebrado entre las partes el 22 de marzo de 1956 con las consecuencias legales pertinentes". Condenó a la demandada al pago de las costas y de $100.00 de honorarios de abogado.

Posteriormente denegó una moción de reconsideración formulada por la demandada.

Libramos el auto para revisar esa sentencia. Ante nos sostiene la demandada-recurrente, entre otras cosas, que era improcedente el que se dictara sentencia sumariamente, sin la celebración de un pleno juicio en los méritos, debido a que entre las partes existía, para su dilucidación o determinación, una controversia real y genuina sobre los hechos y el derecho aplicable.

Hemos escudriñado cuidadosa y minuciosamente los autos, los alegatos de las partes y, especialmente, la declaración jurada de la recurrida y las certificaciones de la recurrente ofrecidas en torno a la solicitud de sentencia sumaria. Hemos concluido que a la luz de las circunstancias concurrentes, la sentencia sumaria dictada era improcedente y que debe revocarse, ordenándose la celebración de un pleno juicio sobre todas las cuestiones en controversia.

Estimamos que había surgido controversia de hechos, a sustanciarse plenamente, en cuanto a los siguientes extremos:

1—Si la parcela de 2.77 cuerdas objeto del convenio privado y que se agruparía con la de 77 céntimos, era una finca independiente, individualizada y que no formaba realmente parte de otra finca de mayor cabida, haciendo innecesario para venderla obtener de la Junta de Planificación la previa aprobación de segregación alguna. Las certificaciones sometidas contradicen en cierto sentido, como sostiene la recurrente, la declaración jurada de la demandante que afirma que la

aprobación se denegó respecto a *las dos parcelas*, cuando sólo se denegó respecto a la de 77 céntimos de cuerda.

2—Si obligaba a la demandada la denominada "Nota", que aparece añadida al convenio mismo después de la firma de la demandada, y por la cual se hacía constar que (1) se fijaba un período razonable, a juicio de la Eastern Sugar Associates, para *que la demandada* obtuviese la dispensa de lotificación, (2) que si no se obtenía así "este compromiso de venta quedará sin efecto", (3) que en tal caso la Eastern pagaría el precio de venta pagado, sin intereses de ninguna índole, quedando ambas partes relevadas de todo ulterior compromiso u obligación bajo este convenio.

3—Si la demandante realizó actos o gestiones que impidieron la aprobación de la segregación, a los fines de la defensa afirmativa de que "la tardanza en obtener el permiso de la Junta de Planificación se debe a la culpa de la demandante", ya que resulta de los autos que la entidad que aparece gestionando la aprobación es la Eastern y no fue la demandada, habiendo sido ésta la que asumió realizar tales gestiones.

4—Si las condiciones o requisitos exigidos por la Junta al resolver la reconsideración fueron de hecho cumplidas.

Estimamos que, como cuestión de derecho, existía una genuina controversia a resolverse, respecto a los siguientes extremos:

1—Si el pacto, convenio o contrato celebrado entre las partes, a la luz de sus concretas y específicas estipulaciones, es en su totalidad radicalmente nulo;

2—Si es válido respecto a la parcela de 2.77 cuerdas, de considerarse que ésta era una parcela separada e independiente;

3—Si, asumiendo la nulidad absoluta del convenio, venía obligada la demandante a pagar intereses legales de la suma de $9,000.00 por el tiempo en que la retuvo, y lo pagado, con

intereses legales, por contribuciones territoriales por la demandada;

4—Si considerando los términos de las dos resoluciones o "informes", de la Junta de Planificación, ésta denegó o no denegó definitivamente la aprobación de la segregación de la parcela de 77 céntimos de cuerda y si procede, en el segundo caso, considerarse de nuevo por ese organismo la cuestión a la luz de lo ocurrido con posterioridad a esas resoluciones o informes, y

5—Si en caso de determinarse que la transcrita nota no obligaba a la demandada, era de aplicación el Art. 1081 del Código Civil, ya que el texto propio de la carta no señalaba plazo a la obligación de solicitar la aprobación por la Junta de Planificación.

*Por todo lo expuesto se revocará la sentencia recurrida y se ordenará la continuación de los procedimientos conforme a lo aquí expresado.*