HOUSING INVESTMENT CORPORATION, demandante y recurrida, *v.* DAVID SOSA LÓPEZ y MILAGROS TORRES, demandados y recurrentes.

*Número:* R-69-180      *Resuelto:* 7 de enero de 1970

*Guillermo Bauzá, M. Bauzá Rolón* y *Otto Bauzá,* abogados de los recurrentes; *William J. Riefkohl, J. M. Calderón García, J. M. Calderón Cerecedo, Cristóbal Colón* y *Francisco Alonso Rivera,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Se trata de la procedencia de una sentencia sumaria en un caso de ejecución de hipoteca por la vía ordinaria basada en que los recurrentes dejaron de pagar las mensualidades vencidas desde el día primero de marzo de 1968 en adelante. La demanda se radicó en 15 de abril de 1968. Dispone el pagaré correspondiente que el principal e intereses son paga-

deros "en plazos mensuales de $123, empezando el día primero de noviembre de 1967 y sucesivamente el día primero de cada mes subsiguiente . . . ." Más adelante provee que "Si cualquiera de los plazos estipulados en este pagaré no fuere satisfecho antes del vencimiento del próximo plazo mensual, entonces, la totalidad de esta obligación . . . quedarán vencidos . . . a opción del tenedor . . . quien podrá exigir su pago."

En su contestación, los recurrentes negaron tal incumplimiento y en contrario alegaron que se ofreció el pago y la recurrida se negó a recibirlo. En contestación a un requerimiento al efecto de que "la mensualidad de marzo de 1968 venían obligados a pagarla en 1ro de marzo de 1968", los recurrentes admitieron:

(1) El pacto sobre la forma y vencimiento del pago de las mensualidades contenido en el pagaré.

(2) "No se admite que no fuera pagado la mensualidad del mes de marzo de 1968, pues se envió un cheque para cubrir la mensualidad correspondiente a marzo de 1968; el Banco de San Juan, lo devolvió a la demandante; la demandante no le avisó a la parte demandada de que el Banco de San Juan había devuelto el cheque. Cuando se pagó el mes de abril de 1968, la parte demandante le devolvió el cheque de dicha mensualidad y el cheque de marzo de 1968; siendo entonces que la parte demandada se entera de que no se había admitido el pago correspondiente al mes de marzo de 1968. Cuando en el mes de abril de 1968 viene a conocimiento de la parte demandada la situación aquí reseñada, se puso la parte demandada en comunicación con un empleado de la parte demandante, quien accedió a que se le enviara la suma de $291.62, en cheque certificado, para cubrir los meses correspondientes a marzo y abril de 1968, con recargo, ya que el plazo a pagarse es de $143.00 [sic]. La parte demandante retuvo los cheques de marzo y abril, hasta después del 15 de abril de 1968, que es cuando le devuelven los mismos a la parte demandada, recibiendo copia de la demanda el 3 de mayo de 1968. Por lo aquí relatado la parte demandada no admite que la mensualidad correspondiente al mes de marzo no fuera pagada, pues lo fue, aunque administrativamente, sin consignación judicial."

La recurrida solicitó se dictara sentencia sumaria por el fundamento que se había admitido el incumplimiento por los recurrentes. En la declaración jurada que acompaña dicha solicitud, se reproduce la alegación de incumplimiento contenida en la demanda. En su oposición a que se dictara la sentencia sumaria solicitada, señalan los recurrentes que en su contestación alegan que se ofreció el pago a la recurrida y que ésta se negó a recibir el mismo, que en todo momento la parte demandada ha estado dispuesta a pagar y a cumplir con su obligación contractual en el interés legítimo de retener su hogar seguro. En la declaración jurada del 30 de julio de 1968 que acompaña dicha oposición, suscrita por la recurrente Milagros Torres, se dice que "hemos estado siempre en la mejor disposición de pagar la hipoteca contraída con la demandante, y al ir a pagar la mensualidad correspondiente a marzo, no quiso la demandante recibir el pago; y así subsiguientemente, se han negado a ello por conducto de sus agentes y empleados . . . hemos hecho múltiples gestiones para que la demandante reciba los pagos a que nos obligamos con ésta, habiéndose negado en una forma obstinada y de mala fe a recibir el mismo, estando en todo momento los demandados dispuestos a pagar y a cumplir con su obligación . . . ."

Por moción separada radicada en 31 de julio de 1968, los recurrentes consignaron en el tribunal la suma total de $863.30 para cubrir las mensualidades correspondientes a los meses de marzo hasta agosto inclusive de 1968 la cual "suma ha estado siempre en la disposición de la recurrida en todo momento." Desde entonces se vienen consignando en el tribunal de instancia las mensualidades pactadas a razón de $143 [sic] cada una.

El tribunal de instancia dictó sentencia sumaria ordenando el pago por los recurrentes del total del principal insoluto del pagaré más intereses, costas y honorarios de abo-

gado estipulados en el mismo o en su defecto decretó la venta del inmueble hipotecado en pública subasta.

Apuntan los recurrentes que incidió el tribunal de instancia al dictar dicha sentencia sumaria pues surge de los autos que existe una controversia legítima. Tienen razón.

La Regla 36 de las de Procedimiento Civil dispone, en síntesis, que podrá dictarse sentencia sumaria en una causa "si las alegaciones, deposiciones, admisiones hechas junto con la declaración jurada, si las hubiere, *demostraren que no hay controversia real en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte que presentó la moción.*" (Énfasis nuestro.)

█ La parte que solicita una sentencia sumaria en un pleito viene obligada a demostrar que no hay controversia genuina de hecho a ser juzgada. *Valcourt Questell* v. *Tribunal Superior*, 89 D.P.R. 827 (1964). Véanse, además, *A.C.P., Inc.* v. *T.C.P., Inc.*, 96 D.P.R. 264 (1968); *Freyre Mestre* v. *Otero Jiménez*, 93 D.P.R. 728 (1966); *Vda. de Viera* v. *Tribunal Superior*, 93 D.P.R. 503 (1966); *C. Brewer P.R., Inc.* v. *F. Vega Otero, Inc.*, 92 D.P.R. 443 (1965); *Díaz Carrión* v. *Eastern Sugar Associates*, 90 D.P.R. 174 (1964); *García López* v. *Méndez García*, 88 D.P.R. 363 (1963); *Roth* v. *Lugo*, 87 D.P.R. 368 (1964); *Mercado Riera* v. *Mercado Riera*, 87 D.P.R. 566 (1963); *Pan American* v. *Tribunal Superior*, 86 D.P.R. 139 (1962); *Cortés Piñeiro* v. *Sucn. A. Cortés*, 83 D.P.R. 685 (1961).

En el caso ante nos, tanto en la moción de la recurrida solicitando se dicte sentencia sumaria como en la declaración jurada que la acompaña, meramente se repite la alegación de la demanda de que los recurrentes han dejado de pagar "las mensualidades vencidas el 1ro. de marzo hasta el día de hoy." Los recurrentes negaron ese hecho en su contestación a la solicitud de sentencia sumaria y en su declaración jurada reafirmaron que trataron de pagar la mensualidad de marzo

y la recurrida se negó a recibirla.

Del requerimiento de admisiones se desprende que el incumplimiento consistió en no pagar la mensualidad de marzo de 1968 el día primero de dicho mes. La contestación al referido requerimiento explica que se pagó durante dicho mes, que el Banco de San Juan le devolvió el cheque a la recurrida y ésta nunca le comunicó tal hecho a los recurrentes. Además, añade que un agente de la recurrida les admitió en abril de 1968 el pago de los meses de marzo y abril de 1968 pero que más tarde durante dicho mes la recurrida lo devolvió a los recurrentes.

De acuerdo con los términos del pagaré en cuestión había que pagar la mensualidad de marzo de 1968 el día primero de dicho mes pero podía pagarse la misma en cualquier día de ese mes y antes del 1ro. de abril de 1968 sin quedar los recurrentes sujetos al pago de la totalidad del principal del pagaré. Nótese que la cláusula de aceleración de vencimiento contenida en dicha obligación provee que "Si cualquiera de los plazos estipulados en este pagaré no fuere satisfecho antes del vencimiento del próximo plazo mensual, entonces la totalidad de esta obligación y sus intereses . . . quedarán vencidas . . . ."

Es aparente de lo expuesto que existe controversia sobre los siguientes hechos:

1.—Si la mensualidad de marzo de 1968 en efecto se pagó durante dicho mes.

2.—Si la aceptación por un agente de la recurrida en abril de 1968 de las mensualidades de marzo y abril de 1968 constituían una renuncia por la recurrida de cualquier incumplimiento incurrido por los recurrentes hasta entonces existente. [1]

---

[1] Llama la atención que una empresa cuyo negocio es invertir fondos en préstamos sobre hogares y no el de adquirir éstos, opte por ejecutar el hogar de una familia, posiblemente aprovechándose de una dilación incurrida por descuido, distracción, u olvido de unos cónyuges que lo habían

El tribunal de instancia ha debido considerar en este caso si al devolver el Banco de San Juan el cheque de los recurrentes a la recurrida durante marzo ésta venía obligada (1) a presentarlo otra vez para su pago el día último de dicho mes de marzo en vista de lo dispuesto en el pagaré sobre el vencimiento acelerado de la deuda y (2) a notificar enseguida a los recurrentes de la devolución del cheque de manera que éstos pudiesen curar cualquier defecto en el mismo o sustituirlo por cualquier otra forma de pago antes de fines de marzo y así cumplir a tiempo con la obligación impuéstale en el pagaré en cuestión.

■ *Por los fundamentos expuestos, se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 13 de diciembre de 1968 y se devolverá el caso para la continuación de los procedimientos.*

El Señor Juez Presidente no intervino.

---

adquirido unos meses antes. No aparece del récord que hubiera incurrido en algún incumplimiento con anterioridad al pago de la mensualidad de marzo de 1968.

Parecería una actitud más razonable que en casos como éstos, se permita el pago retrasado con un recargo razonable por la dilación, consistente de intereses al tipo pactado sobre el principal insoluto de la obligación durante el término de la dilación y sin más recargos por gastos administrativos o legales que en tales casos obviamente no se incurren. De estar generalizada en la comunidad la práctica de ejecutar créditos hipotecarios como se ha hecho en este caso, la Asamblea Legislativa podría explorar la posibilidad de proveer algún remedio a, o restricción a, o reglamentación de, dicha práctica. Véanse los Arts. 370 y 371 del proyecto del Código Hipotecario para Puerto Rico redactado por la Comisión de Reforma Hipotecaria.