WILLIAM N. DEMAS, RICHARD S. BEATTY, CARRY WINSTON, WALTER D. PINKARD y OTROS, demandantes y recurrentes, *v.* BUILDERS INSURANCE COMPANY, demandada y recurrida.

*Número:* R-79-373    *Resuelto:* 9 de mayo de 1980

*McConnell, Valdés, Kelly, Sifre, Griggs & Ruiz-Suria,* abogados de
los recurrentes; *Cancio, Nadal & Rivera* y *Federico Delgado
Torres,* abogados de la recurrida.

El Juez Asociado Señor Negrón García emitió la opinión del
Tribunal.

Capital Mortgage Investments financió la construcción
del Condominio El Caobo a ser realizada por Caribbean
Homes Construction para su dueño Palomar Development
Corp. a un costo de $1,685,000.00. Builders Insurance Company [1] expidió fianza para garantizar el cumplimiento del
contratista Caribbean. [2]

El contrato de construcción entre Palomar y Caribbean se
celebró el 24 de mayo de 1973. Se convino que la obra
empezaría el 30 de noviembre de ese año y finalizaría el 30 de
abril de 1975. No es hasta comienzos de enero de 1974 que se
inicia. La fianza en cuestión, junto a otra para garantizar a
las mismas partes el pago por el contratista de los materiales
y mano de obra (*Labor and Materials Bond*), [3] fueron
otorgadas el 9 de enero de 1974. Siete días más tarde, a
requerimiento también de la financiadora Capital, el First
National Bank of Puerto Rico expidió una carta de crédito
limitada a un (1) año por $217,000.00. Esta cantidad obedeció
a su criterio de que la suma total que ella aportaría para la
construcción no estaba completamente cubierta por la fianza
de cumplimiento de ejecución de Builders. [4]

---

[1] Entidad que por razón de un proceso de liquidación vino a ser representada
por la Asociación de Garantías de Seguros Múltiples.

[2] Capital es beneficiaria de los términos de dicha fianza mediante endoso
extendídole por acuerdo de la fiadora Builders y el contratista Caribbean, como
obligados, y el dueño del proyecto Palomar.

[3] La fianza de labor y materiales y la de ejecución contiene cada una un límite
de responsabilidad de $1,300,000.00.

[4] Ambas garantías totalizaron $1,517,000.00, equivalente aproximado de un
90% del costo de $1,685,000.00 pactado para el edificio. El 10% restante correspondía
a la retención por el dueño de todos los pagos al contratista creándose así un fondo
como garantía adicional al dueño hasta la terminación de la obra. Desde sus inicios

La construcción no fue finalizada para el 30 de abril de 1975, según se contemplaba en el contrato. Aún así, Capital continuó pagando las correspondientes certificaciones hasta el 31 de agosto de 1975, habiendo el contratista realizado obras por valor total de $1,555,957.27 en ese entonces. Luego Capital notifica a Builders que el contratista había incumplido. Builders *no* respondió a los requerimientos de que terminara la obra coincidiendo dicha época con sus dificultades económicas que culminaron con el proceso de liquidación. Ante esta situación, Capital pactó con un tercero la terminación de la obra y contrató materiales y labor pagándoles a los proveedores con el propósito de luego subrogarse y reclamarle a Builders.

Oportunamente Capital demandó a Builders. Alegó que el dueño, Palomar, había observado sus obligaciones bajo el contrato de construcción—requisito previo para hacer efectiva la responsabilidad de la fiadora según los términos del contrato de la fianza—y que ella había cumplido las suyas bajo el contrato de préstamo que realizara con el dueño del proyecto. Reclamó $131,000.00 pagados al contratista que terminó la obra; $70,000.00 por trabajos adicionales a los efectuados por el nuevo contratista; $100,000.00 por pagos de mano de obra y materiales hechos, subrogándose en los derechos de esos acreedores de Builders; $75,000.00 de gastos, desembolsos, salarios y honorarios profesionales necesarios incurridos y a incurrirse para la debida terminación de la obra; y $300.00 diarios por concepto de daños líquidos pactados en el contrato entre Palomar y Caribbean, por demora en la terminación de la obra.

La demandada Builders negó toda responsabilidad bajo la fianza de ejecución a base de que el límite garantizado era hasta $1,300,000.00, y adujo que el contratista, a la fecha en que la financiadora Capital tomó el proyecto para terminarlo o requerirle a la fiadora su terminación, había realizado

---

Capital asignó un financiamiento para la construcción del edificio de sólo $1,427,050, cantidad insuficiente para terminarlo.

obras en exceso de esa cantidad. Alegó que Capital había efectuado ciertos actos ([5]) perjudiciales, que resultaron en la liberación de su responsabilidad. Adujo, además, Builders, que de haber alguna responsabilidad, ésta no alcanzaba ciertas sumas reclamadas por conceptos no contemplados en el contrato de construcción como obligación del contratista original. Finalmente, alegó que no respondía de las partidas por daños líquidos, por cuanto el dueño tenía la opción entre, primero, dar por terminado el derecho del contratista a seguir la obra hasta su fin y exigirle a ella que la terminara a su costo o terminarla el dueño y exigir el reembolso a la fiadora, o, segundo, dejar que terminara la obra y recobrar entonces daños líquidos por cada día de demora, pero no ambos remedios. Esgrimió, además, los mismos razonamientos para negar responsabilidad bajo la fianza de materiales y labor.

El tribunal de instancia, por vía de sentencia sumaria, declaró sin lugar la demanda de la financiadora Capital e impuso $3,000.00 de honorarios. A solicitud de la demandante, respondiendo a nuestra orden de mostrar causa, examinamos la corrección ([6]) de los siguientes pronunciamientos: (1) el relevo de responsabilidad de la fiadora por razón de haber el contratista ejecutado obras por más de $1,300,000.00, límite de su responsabilidad; (2) que la fiadora

---

([5]) Asignar para la construcción del edificio una cantidad por debajo del precio pactado en el contrato; demorar el comienzo de la obra al no entregar prontamente el dinero asignado para la adquisición de la parcela a desarrollarse; actuar negligentemente al no exigir que la fianza fuese aumentada en vista de que iba a tener que aportar más dinero; y no retener el 10% que debía para el fondo de reserva.

([6]) No medió error del tribunal de instancia en resolver, aunque aplicando equivocadamente el derecho, la controversia entre las partes—reducida luego de las etapas preliminares a una interpretación de las fianzas en consideración a las admisiones de las partes y la prueba documental sometídale—por vía del vehículo de la sentencia sumaria. No era necesaria la vista pues el resultado del caso dependía de la aplicación del derecho sobre la prueba documental ante el juzgador. Regla 36.2 de Procedimiento Civil vigente; *García Cruz* v. *El Mundo, Inc.*, 108 D.P.R. 174 (1978); *B.C.R. Co., Inc.* v. *Tribunal Superior*, 100 D.P.R. 754 (1972); *Housing Inv. Corp.* v. *Sosa*, 98 D.P.R. 247 (1970); *Del Toro* v. *Gob. de la Capital*, 93 D.P.R. 481 (1966); *López* v. *Destilería Serallés*, 90 D.P.R. 245 (1964); *Valcourt Questell* v. *Tribunal Superior*, 89 D.P.R. 827 (1964).

no respondía bajo la fianza de labor y materiales; y (3) que no procedía la reclamación por daños líquidos.

Pasemos a considerar los errores apuntados por la demandante recurrente Capital.

## I

Erró la ilustrada sala sentenciadora al concluir que una vez el contratista realizó obras en exceso de $1,300,000.00, se extinguió la responsabilidad de la fiadora:

El contrato de fianza en lo pertinente reza:

"SE HACE CONSTAR POR LA PRESENTE QUE CARIBBEAN HOME CONSTRUCTION CORPORATION, como Principal, . . . y BUILDERS INSURANCE COMPANY, . . . como Fiadora, . . . se comprometen firmemente con PALOMAR DEVELOPMENT CORPORATION, como Beneficiaria, . . . por la cantidad de UN MILLON TRESCIENTOS MIL DOLARES ($1,300,000.00), al pago de cuya cantidad por la presente se obligan mancomunada y solidariamente el Contratista y la Fiadora, sus herederos, albaceas, administradores, sucesores y cesionarios."

.   .   .   .   .   .   .   .

"EN VISTA DE LO ANTERIOR, ES CONDICION DE ESTA OBLIGACION QUE si el Contratista cumpliera con dicho contrato fiel y prontamente y dentro del término prescrito, esta obligación quedará sin efecto; de lo contrario, se mantendrá en todo su efecto y vigor.

En el momento en que el Contratista incurra en incumplimiento de Contrato y así lo declare el Dueño, luego de que este último haya cumplido con su obligación bajo el mismo, la Fiadora podrá remediar el incumplimiento inmediatamente o de otro modo:

(1) Cumplirá con el Contrato de acuerdo con sus términos y condiciones, u

(2) obtendrá una o más licitaciones de personas que puedan terminar la obra y las someterá al Dueño, y luego de determinar junto a éste cuál es el mejor postor responsable, gestionará un contrato entre dicho postor y el Dueño, y a medida que el trabajo progrese proporcionará (aunque se hubiese incurrido en incumplimiento de contrato o contratos de terminación una o más veces) fondos suficientes para cubrir el costo de la terminación de la obra,

los cuales—una vez restado el balance del precio del contrato e incluidos otros costos y daños por los cuales la Fiadora sea responsable bajo dicho contrato—no excederán la cantidad indicada en el primer párrafo de este documento. El término balance del precio del contrato, según se usa en este párrafo, significará la cantidad total pagadera por el Dueño al Contratista bajo el contrato y cualquier enmienda al mismo, menos la cantidad propiamente pagada por el Dueño al Contratista." (Traducción nuestra.)

De su lectura se desprende que la fiadora Builders y el contratista Caribbean se obligaron con el dueño de la obra—y con Capital en virtud del endoso de la fianza—por la cantidad de $1,300,000.00, y se comprometieron a garantizar el fiel y pronto cumplimiento por parte del contratista, manteniéndose dicha fianza en todo su vigor hasta que se diera cumplimiento a los términos del contrato. (7) Builders se obligó a proporcionar los fondos necesarios para la terminación de la obra—menos la parte del precio pactado en el contrato de construcción que aún no hubiese sido satisfecha por el dueño—que aún incluyendo otros gastos y daños por los que pudiera la fiadora ser responsable no podían exceder del montante de la fianza antes indicado. Al ponderar los propósitos y lenguaje del contrato de fianza debemos interpretarlo como que garantiza la terminación de la obra por el contratista según el contrato de construcción. En el momento en que surge la obligación de encargarse de que se termine la obra, cobra vigencia y entra en juego la responsabilidad de la fiadora hasta el límite de $1,300,000.00 e independientemente del valor de las obras realizadas hasta el momento en que el contratista la abandonara o el dueño le exigiera su retiro por no haberla terminado dentro del término estipulado.

Existen además otras consideraciones corroborativas de nuestra interpretación. La demandada recurrida y el tri-

---

(7) El contrato de construcción entre Palomar y Caribbean lee en lo pertinente:

"El término sustancialmente terminado se definirá como el momento en que el edificio esté listo para ser usado y el Contratista le haya facilitado al Dueño todos los permisos y aprobaciones de las agencias gubernamentales y/o instituciones financieras concernidas que se requieran para dicho uso." (Art. 4.) (Traducción nuestra.)

bunal de instancia pusieron énfasis en la exigencia por la financiadora Capital, al expedir la fianza, de una garantía adicional de $217,000.00. Este dato no milita contra nuestra interpretación sino que la refuerza. Ciertamente, no puede significar, como pretende la fiadora, que al alcanzar el valor de la obra realizada por el contratista la cantidad de $1,300,000.00 cesaría su responsabilidad como fiadora. Ello implicaría que hubiese sido necesaria otra garantía. En tal eventualidad, lo lógico hubiese sido que la fiadora pidiese la carta de crédito para tener vigencia, no durante el primer año, sino durante la postrimería de la obra. Lo razonable es inferir la intención de Capital en proteger sus intereses contra un posible incumplimiento del contratista *desde los inicios y por todo el proyecto*, lo que constituye la única explicación para que la garantía adicional por $217,000.00 tuviere vigencia durante el primer año solamente. De suerte que apenas comenzada la obra si el contratista hubiese fallado en su obligación, ambas fianzas hubiesen cubierto satisfactoria y suficientemente el interés de Capital. Transcurrido un año, cabe suponer que las obras realizadas sobrepasarían los $217,000.00, convirtiéndose entonces en innecesaria dicha garantía por resultar suficiente la de Builders para la realización del resto del proyecto.

Este enfoque es consistente con nuestra decisión en *Caribe Lumber Corp.* v. *Marrero*, 78 D.P.R. 868 (1955). Allí el recurrente garantizaba solidariamente a dos personas ante el suplidor de materiales, en virtud de un documento que manifestaba "me constituyo garantizador solidario de estas personas o de cualquiera de ellos a favor de ustedes hasta la suma de dos mil dólares ($2,000.00) incluyendo interes[es]...". El crédito extendido llegó en una ocasión a arrojar una deuda por más de $10,000.00 de la que los obligados primarios pagaron parte, quedando un balance de casi $2,000.00. La apelada optó por cobrar del fiador, quien negó responsabilidad por habérsele extendido crédito a los afianzados por encima del límite a que él se había obligado. Resolvimos:

"La garantía tampoco quedó extinguida por el hecho de que el volumen de las compras efectuadas por los garantizados durante un año y meses ascendiera a más de $10,000.00. La garantía no estaba limitada a los primeros $2,000.00 de esas compras, ni a un término fijo." (Citas omitidas.)

Nuestra interpretación es cónsona con el principio que hemos reiterado jurisprudencialmente en el sentido de que las fianzas prestadas por compañías que se dedican a ello, en consideración al pago de primas, deben ser interpretadas liberalmente a favor de sus beneficiarios. *Planned Credit of P.R., Inc.* v. *Page*, 103 D.P.R. 245, 259 (1975); *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964); *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.*, 90 D.P.R. 104 (1964); *Cristy y Sánchez* v. *E.L.A.*, 84 D.P.R. 234 (1961).

## II

Una vez concluido que la fiadora estaba obligada a remediar el incumplimiento del contratista hasta la cantidad de $1,300,000.00 independientemente de la parte de trabajo realizado, esta responsabilidad se extiende a la fianza por labor y materiales. Recuérdese que la fiadora responde bajo ella si el contratista dejare de pagar materiales o labor necesarios para terminar la obra. Ante la imposibilidad de cobrar inmediatamente de Builders, Capital pagó materiales y labor suplida para la terminación del edificio. Lo hizo para subrogarse en el crédito y ejercitarlo contra la fiadora en su día. Ello es legítimo. En consecuencia, es frívolo argüir que bajo la fianza, la fiadora sólo responde a quienes caen bajo la definición de "reclamante". Al subrogarse Capital vino a ocupar el lugar de los posibles reclamantes por materiales o labor, e hizo las notificaciones necesarias a Builders.

Establecido que Builders continuaba siéndole responsable a los beneficiarios de ambas fianzas hasta el cumplimiento fiel y exacto de la prestación, concentremos nuestra atención sobre las restantes defensas planteadas por ésta en el sentido de que los propios actos de la financiadora Capital, en

relación a los contratos y fianzas aquí envueltos, descargaron de toda responsabilidad a la fiadora, por virtud de lo resuelto en *Olazábal* v. *U.S. Fidelity, Etc.*, 103 D.P.R. 448 (1975). Nuestro análisis exige una breve referencia a la misma. Allí la dueña del proyecto había hecho indebidamente ciertos pagos adelantados al contratista, y, en adición, había dejado de retener el 10% estipulado que se determinó perjudicó a la fiadora ya que la retención hubiese constituido un fondo de reserva que podía utilizar el dueño para la terminación de la obra. La cantidades pagadas indebidamente en exceso totalizaban $37,360.93. La demandante en dicho caso reclamaba $23,164.46 como gastos incurridos para terminar la obra. Se aplicó la doctrina dimanante del Art. 1751 del Código Civil, [8] al efecto de que en algunas circunstancias, la fiadora pueda resultar liberada *en la medida en que los actos del dueño o los beneficiarios de la garantía la hayan perjudicado,* y dijimos:

"Ya no rige la antigua doctrina elaborada en los tiempos de los fiadores gratuitos al efecto de que la menor violación del contrato por parte del dueño relevaba a la fiadora de responsabilidad *in toto.*" (Pág. 454.)

Surgía allí que la reclamación de los demandantes era por una cantidad menor que la que dejaron de retener al contratista, por lo que de haber retenido lo estipulado hubiesen tenido suficiente para terminar la obra.

Apliquemos la doctrina de *Olazábal* al caso de autos. La financiadora Capital alega haber incurrido en gastos por $131,000.00 más $70,000.00 para la terminación del edificio. De los autos surge que el dueño sólo retuvo al contratista la suma de $39,670.00 de las certificaciones de obras ascendentes a $1,555,957.27 cuando debieron haberle deducido el 10% de dichas certificaciones, o sea, la suma de $155,595.73. La diferencia arroja un saldo desfavorable de $115,925.73 que debieron haber sido reservados por Capital y que hubie-

---

[8] "Los fiadores, aunque sean solidarios quedan libres de su obligación siempre que por algún hecho del acreedor no puedan quedar subrogados en los derechos, hipotecas y privilegios del mismo." 31 L.P.R.A. sec. 4956.

sen podido ser utilizados en la terminación de la construcción del edificio. Debe, pues, deducirse esa diferencia de la partida reclamada de $131,000.00. Contra los $70,000.00 reclamados por obras, la fiadora Builders alega que incluyen partidas no contempladas en el contrato de construcción y que, por lo tanto, no eran de su responsabilidad ni de la contratista original Caribbean. De resultar ello así, deberá reducirse esa partida en la medida que sea necesaria.

## III

Resta determinar si la demandante recurrente es acreedora a los daños líquidos a razón de $300.00 por cada día de demora. El remedio a que tiene derecho el dueño de una obra sujeta a una fianza de este tipo es pedir oportunamente a la fiadora que termine la obra imputándole a ésta toda responsabilidad hasta que sea terminada—o terminarla él mismo y reclamar a la fiadora—o dejar que el contratista termine la obra. En dichas eventualidades, al no poderse determinar confiablemente los daños, por lo general se estipulan daños líquidos. En *Olazábal* resolvimos, por consignarlo así el contrato de construcción, que sólo en los casos en que el dueño dejaba al contratista continuar con la obra era que procedía la compensación de daños líquidos por ser de difícil estimación. Sin embargo, insuflamos vigor a la *penalidad* contenida en el contrato en una cláusula separada que consideramos compatible con la que preceptuaba la elección de remedios en favor del dueño. La misma cláusula que establecía tales opciones disponía que era sin perjuicio de otros derechos a remedios que pudiera tener el dueño.

En el presente caso existe una cláusula penal. [9] No surge de los autos ninguna otra que obligue al dueño a

[9] La cláusula 4 del contrato entre Palomar y Caribbean reza:

"Las partes convienen que el factor tiempo es esencial en esta obra y, por cada día de demora después de la fecha establecida en el Contrato, el Contratista pagará al Dueño en calidad de daños líquidos, y no como penalidad, la cantidad de $300.00 por cada día natural de demora después de la fecha permitida en este Contrato. El dueño podrá deducir esta cantidad de cualquier suma que le adeude al Contratista." (Traducción nuestra.)

optar un solo remedio. Por ende, no hay base para restarle efectividad a su propósito primordial de sustituir y evaluar anticipadamente los daños que pueda producir el incumplimiento—Art. 1106, 31 L.P.R.A. sec. 3131; *Simonet* v. *Igaravídez*, 90 D.P.R. 1 (1964), ello aún cuando tuviere carácter punitivo, *R. C. Leasing Corp.* v. *Williams International Ltd.*, 103 D.P.R. 163 (1974). Es elemental que una cláusula penal releva de tener que probar daños. *C.M. & Finance Corp.* v. *Cooley*, 103 D.P.R. 6 (1974); *Levitt & Sons of P.R., Inc.* v. *DACO*, 105 D.P.R. 184 (1976). Tampoco tenemos ante nos alegación ni prueba de que la cantidad fijada sea excesiva o irrazonable a los fines de mover al tribunal ejercer su facultad moderadora. Art. 1108, 31 L.P.R.A. sec. 3133; *Clausells* v. *Salas*, 51 D.P.R. 89 (1937); y *Gil* v. *C.R.U.V.*, 109 D.P.R. 551 (1980).

▪ Ahora bien, se impone en otra dimensión una reducción a la cantidad a pagarse en daños líquidos a base de restar los días de demora causados por Capital, *Gil* v. *C.R.U.V.*, supra. Hemos visto que la obra debió empezar el 30 de noviembre de 1973, sin embargo, comenzó realmente durante el mes de enero de 1974 debido a actuaciones de Capital. Es justo y razonable, pues, que la fecha en que debió terminar la obra el contratista se prorrogue por el término correspondiente, y que de ahí en adelante se computen los daños líquidos hasta la terminación de la obra según lo pautado en *Olazábal*, supra, págs. 463–464.

*En virtud de lo expuesto se dictará sentencia expidiendo el auto y revocando la del Tribunal Superior. Se devolverá el caso para trámites compatibles con lo aquí dispuesto.*

El Juez Asociado Señor Díaz Cruz no intervino.

El que esta cláusula típica en este tipo de contrato, expresamente disponga que no se trata de una penalidad es perfectamente comprensible. Intenta superar el enfoque doctrinario de los tribunales norteamericanos de invalidarlas cuando resultan un castigo o penalidad en lugar de una reparación por daños. Véanse *Pueyó* v. *Real Hnos.*, 18 D.P.R. 862 (1912); *United States* v. *Bethlehem Steel Co.*, 205 U.S. 105 (1907); *Wise* v. *United States*, 249 U.S. 361 (1919); *Priebe and Sons* v. *United States*, 332 U.S. 412 (1947); *Robinson* v. *United States*, 261 U.S. 486 (1923); *Sun Printing and Pub. Assoc.* v. *Moore*, 183 U.S. 642 (1902).