# 95 DTA 209

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE CAROLINA-FAJARDO

JOSEPH ESPINOSA RODRIGUEZ
Demandante-Apelante

v.

EDUVINA CARABALLO RODRIGUEZ
Demandada-Apelada

Núm. KLAN-95-00231

San Juan, Puerto Rico, a 30 de junio de 1995

Panel integrado por su presidenta, Juez Rivera de Martínez
y los Jueces Cabán Castro y Martínez Torres

Rivera de Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ante nuestra consideración tenemos un recurso de apelación mediante el cual solicita el apelante que dejemos sin efecto una sentencia emitida el 28 de diciembre de 1994, por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Fajardo, y notificada el 21 de febrero de 1995. El tribunal de instancia determinó que, a pesar de haberse instado un pleito independiente en cobro de dinero, una reclamación similar de la apelada había sido resuelta en forma final y firme por el Departamento de Asuntos del Consumidor (D.A.C.O.). Resolvió además dicho tribunal, que el apelante actuó con temeridad por presentar el pleito independiente de cobro de dinero, a sabiendas de que no era cierto lo planteado, y de que no se le adeudaba suma alguna de dinero. Citó en aprobación el artículo 1709 de nuestro Código Civil, 31 L.P.R.A. sec. 4821, referente al contrato de transacción que ambas partes suscribieron para dar por terminada la querella presentada por la apelada ante el D.A.C.O.

Para ubicar la controversia en su correcta perspectiva examinemos los hechos que dan origen al recurso instado.

### I

El apelante Joseph Espinosa Rodríguez, se comprometió a construir una casa a la señora Eduvina Caraballo Rodríguez, aquí apelada. Ambos contrataron la construcción de una vivienda en un terreno localizado en el Barrio Zarzal en Río Grande a un costo de treinta y cinco mil ($35,000) dólares, a pagarse en cuatro pagos. La apelada pagó la suma de

veintiocho mil ($28,000) dólares al apelante. El contrato luego fue modificado.

El 21 de junio de 1991, la apelada radicó ante el D.A.C.O. la querella Q91-432, por incumplimiento de contrato alegando, en síntesis, que dicha obra adolecía de vicios de construcción, por lo que decidió retener la cantidad de siete mil ($7,000) dólares. De otra parte, el señor Espinosa, reclamó dicha cantidad y responsabilizó a la querellante del incumplimiento por cambiar los términos del contrato original.

En ánimo de solucionar la disputa, el 23 de julio de 1991 ■ las partes firmaron, ante un funcionario del D.A.C.O., un contrato de transacción en el cual ambos acordaron el cierre y archivo del caso y se comprometieron a disolver dicho contrato de obra y no hacer reclamación adicional alguna.

Dicho contrato de transacción reza como sigue:

*"Yo, Eduvina Caraballo, solicito el cierre y archivo de este caso ya que acordé con el querellado que retendría el balance pendiente del contrato y el querellado se comprometió a no hacer ninguna reclamación adicional relacionada a los trabajos realizados en la propiedad localizada en la Carr. Núm. 3 Km. 29.7, Bo. Zarzal de Río Grande. Se solicita se disuelva el contrato."*

El 21 de diciembre de 1992, el D.A.C.O. emitió una resolución acogiendo el contrato de transacción. De las determinaciones de hechos formuladas, se podía inferir erróneamente que la querellante (señora Caraballo) se obligaba a pagarle al querellado siete mil ($7,000) dólares por la cantidad retenida del precio total de la construcción de la casa, y el querellado se comprometía a no reclamar cinco mil, ochocientos cuarenta y dos ($5,842) dólares por el costo adicional de la ampliación de la casa. ■

Así las cosas, y basándose en la interpretación que ofreció el D.A.C.O. al contrato de transacción, el 28 de julio de 1993 ■ el apelante, señor Espinosa Rodríguez radicó una moción ante ese Departamento para que pusiera en vigor la resolución del 21 de diciembre de 1992, ya que, alegadamente la querellante-apelada, no había cumplido con lo ordenado en dicha resolución.

El 6 de agosto de 1993, la apelada se opuso a dicha moción. En su oposición alegó que:

*"(a) El contrato de transacción nunca dispuso compensación alguna para el querellado.*

*(b) Que el D.A.C.O. erró en su determinación de hecho número (4) al interpretar que la querellante se obligó a pagarle siete mil ($7,000) dólares al querellado.*

*(c) Que el querellado pretendía que por una equivocación en las determinaciones de hechos de la resolución del D.A.C.O. se le concediera algo que sabía que no era cierto, por lo que interesaba que se revisara el contrato de transacción firmado el 23 de julio de 1991."*

El 16 de septiembre de 1993, el abogado del querellado-apelante, presentó una moción titulada: *"Réplica a Moción de Oposición Pidiendo se Ordene el Cumplimiento de la Orden de Pago."* Entre otros argumentos, expuso dicho abogado que no representó al querellado en el ámbito administrativo, por lo que desconoce el contrato de transacción firmado en el D.A.C.O., pero que aun así, la querellante no tenía derecho alguno por ser ésta una sentencia final y firme.

El 4 de octubre de 1993, la querellante-apelada presentó una moción contestando dicha réplica. Volvió a señalarle al D.A.C.O. que el querellado quería aprovecharse del error

cometido en las determinaciones de hechos, por lo que invitaba a ese Departamento a examinar el contrato de transacción firmado el 23 de julio de 1991.

El 9 de febrero de 1994, el D.A.C.O. emitió y notificó a las partes una orden contestando la moción presentada por el querellado, consistente en lo siguiente:

*"Aténgase a la Resolución emitida y al acuerdo de transacción suscrito el 21 de julio de 1991".*

El querellado-apelante no solicitó reconsideración, por lo que dicha orden advino final y firme el 11 de marzo de 1994, al cumplirse el término jurisdiccional de treinta (30) días, conforme a lo establecido en la sección 4.3 de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2172, conocida como la Ley de Procedimiento Administrativo Uniforme. Tampoco presentó un escrito de revisión ante el Tribunal Superior, de acuerdo con lo dispuesto por la Regla 3 para el procedimiento de revisión de decisiones administrativas ante el Tribunal Superior, 4 L.P.R.A. Ap. VIII-B. Esas eran las disposiciones estatutarias y reglamentarias vigentes para ese momento.

Ante esa orden del D.A.C.O., y pretendiendo eludir los preceptos de ley antes mencionados, el 28 de abril de 1994, el apelante presentó una demanda en cobro de dinero, independiente del pleito en el D.A.C.O., reclamando la suma de siete mil ($7,000) dólares a la señora Caraballo, ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Fajardo.

El 3 de agosto de 1994, la demandada-apelada, señora Caraballo contestó la demanda y presentó defensas afirmativas. Además, solicitó que se dictara sentencia sumaria a su favor. El 29 de agosto de 1994, el demandante en dicho caso y aquí apelante, se opuso a la solicitud de sentencia sumaria.

Atendiendo las respectivas mociones, y trabada la controversia, el 21 de octubre de 1994, el Tribunal de Primera Instancia celebró vista en su fondo, emitiendo sentencia el 28 de diciembre de 1994, en contra del demandante-apelante. Resolvió dicho tribunal que esta parte actuó con temeridad al presentar una *"acción a sabiendas de que no es cierto y que no se le adeuda suma alguna"*. Esta sentencia fue notificada el 21 de febrero de 1995.

El 21 de marzo de 1995, el apelante radicó el recurso ante nuestra consideración alegando que el Tribunal de Primera Instancia erró en la aplicación del derecho a los hechos del caso, y que la sentencia sumaria no procedía en derecho.

El 18 de abril de 1995, la apelada se opuso mediante moción de oposición.

Hemos realizado un riguroso análisis de todos los argumentos de las partes y de los documentos obrantes en autos y examinados los méritos de los señalamientos resolvemos que al apelante no le asiste la razón. Veamos.

## II

En lo referente al primer error señalado por el apelante, relativo a la improcedencia de la sentencia sumaria, se ha sostenido reiteradamente que únicamente cuando en un pleito los hechos no están en controversia y sólo se presenta una cuestión de derecho es que procede que el Tribunal disponga del asunto mediante sentencia sumaria, de conformidad con la Regla 36 de las de Procedimiento Civil■ *Tello Rivera v. Eastern Air Lines,* 119 D.P.R. 83 (1987). Usado este mecanismo con sabio discernimiento resulta ser un valioso mecanismo procesal para descongestionar los calendarios judiciales. *Padín v. Rossi,* 100 D.P.R. 259 (1971). Así también, un tribunal no puede en una moción de sentencia sumaria juzgar cuestiones de

hecho y su autoridad se circunscribe a determinar si hay cuestiones que deben dilucidarse en juicio. *Sucn. Meléndez v. D.A.C.O.,* 112 D.P.R. 86 (1982). Para considerar una moción de esta naturaleza, hay que presumir ciertos todos los hechos no controvertidos que se hacen constar en los documentos y declaraciones juradas que acompañan la misma. *Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell,* 117 D.P.R. 714 (1986).

En el presente caso, al considerar el tribunal la moción de sentencia sumaria, estaba en la obligación de evaluar si se había demostrado, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo aplicable determinaría una sentencia a su favor como cuestión de derecho. *Tello, Rivera v. Eastern Air Lines, supra; Jorge v. Universidad Interamericana,* 109 D.P.R. 505; *Flores v. Municipio,* 114 D.P.R. 521; *Cervecería Corona Inc. v. Tribunal Superior,* 99 D.P.R. 698; *Housing Inv. Corp. v. Sosa,* 98 D.P.R. 247; *Roth v. Lugo,* 87 D.P.R. 386 (1963). El Tribunal aparentemente no estaba seguro y optó por celebrar una vista en su fondo el 21 de octubre de 1994 en la cual ambas partes presentaron su prueba█ lo cual convenció en los méritos al tribunal de que el apelante no tenía razón. Aun cuando el tribunal tituló su escrito *"sentencia sumaria"*, la realidad es que dispuso del caso en sus méritos, cosa que no estaba impedido de hacer.

Por las razones que anteceden el planteamiento del apelante no puede llevarnos a revocar la sentencia.

En adición a lo anterior, resulta evidente que al no cumplir con los requisitos necesarios para que el Tribunal Superior revisara la orden emitida por el D.A.C.O.█ el apelante decidió instar una acción independiente de cobro de dinero. Por tal razón, debe aplicarse la norma de cosa juzgada█ por ser ésta una reclamación ya resuelta por el D.A.C.O. de forma final y firme. La doctrina de cosa juzgada en el ámbito administrativo tiene varias vertientes, a saber: dentro de la misma agencia a sus propias decisiones; interagencialmente, es decir, de una agencia a otra; y, como en nuestro caso, entre las agencias y los tribunales. *Rodríguez Oyola v. Machado Díaz,* ___ D.P.R. ___ (1994), **94 1 J.T.S. 82**, a la pág. 12006; *Pagán v. Universidad,* 107 D.P.R. 720 (1978).

Cuando una agencia administrativa actúa en una capacidad judicial y resuelve controversias de hechos ante sí, que las partes han podido litigar en forma oportuna y adecuada, los tribunales no han vacilado en aplicar la doctrina de cosa juzgada para imponer descanso en la controversia. *Rodríguez Oyola v. Machado Díaz, supra.*

En el caso de autos las partes comenzaron el litigio ante el D.A.C.O., y luego, en el transcurso del pleito, voluntariamente decidieron ponerle fin a la controversia, mediante un acuerdo de transacción, el cual fue avalado por dicho Departamento█ Es norma reiterada que un acuerdo de transacción tiene el propósito de terminar un pleito comenzado, y comprende los objetivos expresados específicamente y los que por inducción lógica necesaria deben entenderse comprendidos en la transacción. *Ferbus v. MARPE Construction Corp.,* ___ D.P.R. ___ (1994), **94 J.T.S. 19**█

El artículo 1715 del Código Civil, 31 L.P.R.A. sec. 4827, es enunciativo del principio favorable a la autoridad de la cosa juzgada de lo convenido en la transacción. El mismo, reza como sigue: *"la transacción tiene para las partes autoridad de cosa juzgada, pero no procederá la vía de apremio sino tratándose del cumplimiento de la transacción judicial".* Esto quiere decir que las partes tienen que considerar los puntos discutidos como definitivamente resueltos y no pueden volver nuevamente sobre éstos. También significa que la transacción judicial es la única que tiene fuerza para abrir la vía de apremio, es decir, pedir la ejecución como si se tratara de una sentencia firme. *Neca Mortgage Corp. v. A & W Developers, supra,* a la pág. 604; *Citibank v. Dependable Ins. Co. Inc.,* 121 D.P.R. 503, 516 (1988).

No obstante, aun cuando la transacción tiene para las partes la autoridad de la cosa juzgada, ello no opera para impedir que este Tribunal interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa. *Cooperativa de Seguros Múltiples de P.R. v. Lugo Torres,* **94 J.T.S. 77**, D.P.R. (1994).

En armonía con lo anteriormente expresado, interpretar el contrato de transacción como pretende el apelante, en el sentido de que la apelada se obligó a pagarle siete mil ($7,000) dólares, significaría burlar la letra e intención clara que surge de la totalidad del texto█ Indudablemente las partes acordaron poner fin a la querella presentada, renunciando ambos a hacer cualquier tipo de reclamación que tuviera que ver con el contrato de obra.

En cuanto al segundo error señalado en el que alega el apelante que el Tribunal de Primera Instancia erró en la aplicación del derecho a los hechos del caso, no se cometió el mismo, por los fundamentos aducidos. El contrato de transacción entre las partes es patentemente claro.

Tampoco tiene razón el demandante-apelante al alegar que el D.A.C.O. resolvió a su favor la orden emitida el 9 de febrero de 1994, cuando dispuso: *"Aténgase a la Resolución emitida y al acuerdo de transacción suscrito el 21 de julio de 1991"*. Correctamente fueron rechazadas de plano las argumentaciones del apelante, pues si se hubiese resuelto la controversia a su favor, dicho Departamento venía obligado a poner en vigor su orden, de conformidad con lo dispuesto en el artículo 7 de la Ley Núm. 148 de 27 de junio de 1968, según enmendada█ La susodicha orden tuvo el efecto para todos los propósitos de un *"no ha lugar."*

Por los fundamentos esbozados, confirmamos la sentencia recurrida, emitida el 28 de diciembre de 1994, por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Fajardo, la cual desestimó el caso de epígrafe.

Lo acordó el tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 95 DTA 209

**1.** En las Determinaciones de Hechos de la sentencia sumaria y en la resolución del D.A.C.O., equivocadamente se hace mención de dicha transacción aludiendo a la fecha del 21 de julio de 1991.

**2.** La resolución en su determinación de hechos, núm. 4 (a) (b) (c), dispone como sigue:

*"El 21 de julio de 1991 las partes llegaron a un acuerdo sobre lo siguiente:*

*a. La querellante se comprometió a terminar la obra por su cuenta.*

*b. El querellado cobraría solamente los $7,000.00 que la querellante le adeudaba por la diferencia entre $28,000.00 y $35,000.00 por el precio de construcción de la vivienda.*

*c. El querellado se comprometió a no reclamar el costo adicional por la ampliación de la vivienda que asciende a $5,842.00."*

**3.** Siete (7) meses después del D.A.C.O. emitir la resolución final a la cual hemos hecho referencia.

**4.** Dicha regla preceptúa en lo pertinente, como sigue:
*"36.3 Moción y procedimiento*

*La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."* 32 L.P.R.A. Ap. III R. 36.3

**5.** El propio apelante en la página 2 de su Escrito de Apelación indica que el tribunal de instancia celebró una vista en su fondo, así como el tribunal de instancia en su sentencia.

**6.** Una solicitud de la revisión administrativa estaba fuera del término, ya que el D.A.C.O. notificó la orden el 9 de febrero de 1994 y el demandante-apelante radicó la demanda el 28 de abril de 1994. Por lo tanto, el Tribunal de Primera Instancia, Sala Superior de Fajardo no tenía jurisdicción sobre el caso de autos al transcurrir el término fatal de treinta (30) días, sin que el demandante-apelante solicitara la revisión de la resolución administrativa, a tenor con la sec. 4.3 de la ley de Procedimiento Administrativo Uniforme, *supra*.

**7.** En los hechos de nuestro caso aplica la presunción de cosa juzgada, pues hay la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Negrón v. C.I.T.,* 111 D.P.R. 657 (1981).

**8.** *"Si una controversia degenera en un pleito y, luego de éste haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, se trata de un contrato de transacción judicial que tiene efecto de terminar el pleito".* Neca Mortgage Corp. v. A & W Developers. ___ D.P.R. ___, **95 J.T.S. 10,** a las págs. 603-604 (1995).

**9.** En este sentido, el artículo 1709 de nuestro Código Civil, 31 L.P.R.A. sec. 4821, lee como sigue: *"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado".*

**10.** *"La estipulación que constituye una transacción de un pleito debe ser interpretada bajo un supuesto de lealtad y corrección de elaboración, entendiendo que las partes quisieron expresarse según el modo normal de gentes honestas, y no buscando circunloquios, confusiones deliberadas u oscuridades. La estipulación debe ser interpretada de modo que el sentido que se le atribuya sea el más conforme para llegar a un desenvolvimiento leal de las relaciones contractuales, y para llegar a las consecuencias contractuales exigidas conforme a las normas éticas. Las declaraciones de voluntad, conferidas en la estipulación, deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe."* Ferbus v. MARPE Construction Corp., *supra.,* a la pág. 11547.

**11.** *"Orden de cesar y desistir.*

........

*"(c) El Director podrá recurrir al Tribunal Superior de Puerto Rico en solicitud de que se ponga en vigor cualquier orden correctiva. 23 L.P.R.A. sec. 1007 (c)."* Véase, además, *D.A.C.O. v. Alturas de Florida Development Corp.,* ___ D.P.R. ___ (1993), **93 J.T.S. 33,** a la pág. 10478.